THE PEOPLE OF THE STATE OF NEW YORK, Appellants, *v.* THE NEW YORK AND MANHATTAN BEACH RAILWAY COMPANY et al., Respondents.

An action to recover real property is not within the purview of the act of 1875 (chap. 49, Laws of 1875), authorizing actions to be brought by the people of the State to recover "money, funds, credits and property" held by public corporations, boards, officers or agents for public purposes, which have been wrongfully converted or disposed of; the word "property" associated with the preceding words of specific description in the

act is to be construed as referring to property of the same general character.

The said act was not intended to confer jurisdiction to review by means of an action as therein prescribed the proceedings of towns in town meetings or to set them aside upon the allegation that the action of a town meeting was produced by corruption, intimidation or violence.

Accordingly *held,* that an action by the people was not maintainable under said act to recover lands of a town, the title to which, it was alleged, had been wrongfully acquired, through the wrongful interference of its servants and agents with the action of a town meeting ; they procuring the passage of a vote authorizing the conveyance of the lands for a grossly inadequate sum, by the action of persons not legal or qualified voters.

(Argued March 8, 1881; decided March 22, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made the second Monday of September, 1880, which reversed a judgment in favor of plaintiff, entered upon an order overruling a demurrer to plaintiff's complaint. (Reported below, 22 Hun, 95.)

The nature of the action and the material allegations of the complaint are set forth in the opinion.

*Benjamin G. Hitchings* for appellant. The cause of action set out in the complaint is within the statute (Laws of 1875, chap. 49), so as to sustain a suit by the people under that statute. (New Code, § 1969.) A county is a corporation, and included in the words " municipal or other public corporation." (*People* v. *Ingersoll,* 58 N. Y. 28.) This case is within the spirit and directly within the object and intent of the statute. (*People* v. *Ingersoll,* 58 N. Y. 1 ; *People* v. *Fields,* id. 491 ; id. 44 ; *People* v. *Tweed,* 63 id. 207.) Even if the defendant is entitled to a return of the money the want of an averment of a tender or offer is not a ground of demurrer. (*Thompson* v. *Commissioners,* 79 N. Y. 54 ; *Allerton* v. *Allerton,* 50 id. 670 ; *Hay* v. *Hay,* 13 Hun, 315.) In cases of actual fraud or wrong the wrong-doer has no equity, and will not be allowed even at the hearing for money expended in perpetrating the wrong, or for improvements upon the property wrongfully obtained.

(*Sands* v. *Codwise*, 4 Johns. 536; Bump on Fraud. Convey. [2d ed.] 594; 23 Penn. St. 321.) The position of defendants, that the plaintiff should have offered in the complaint to restore the consideration, is entirely without force. (*Livingston* v. *Harris*, 3 Paige, 528; *Sudd* v. *Seaver*, 8 id. 554; *Cole* v. *Savage*, 10 id. 583; *Schermerhorn* v. *Tallman*, 14 N. Y. 129.)

*Alfred C. Chapin* for respondents. Chapter 49 of the Laws of 1875 was passed to facilitate prosecutions against certain public officers, and prosecutions under it against others cannot be maintained. (*People* v. *Tweed*, 5 Hun, 356, 382; 63 N. Y. 202; id. 194; *People* v. *Starkweather*, 42 Super. Ct. 325.) As this statute derogates from the common law, it must be strictly construed. (*Dewey* v. *Goodenough*, 56 Barb. 54; *Burnside* v. *Whitney*, 21 N. Y. 148; *People* v. *Gates*, 57 Barb. 291; *Lease* v. *Vance*, 28 Iowa, 509; *State* v. *Woodson*, 41 Mo. 227; *O'Brion* v. *State*, 12 Ind. 369; *Newell* v. *Wheeler*, 48 N. Y. 486.) It was necessary to show that an offer has been made to restore the consideration. (*People* v. *Canal B'd*, 55 N. Y. 390; *Town of Springport* v. *Teutonia Sav. Bk.*, 75 id. 397, 407; Code, §§ 488, 490.) There is no cause of action until the town rescinds the contract of sale. (*Baker* v. *Robbins*, 2 Denio, 136.)

ANDREWS, J. We think the demurrer in this case was well taken.

The action is brought under the assumed authority of the act chap. 49 of the Laws of 1875 to recover possession of certain common lands in the town of Gravesend, granted in 1645 by a charter of the Dutch government, subsequently confirmed by the English colonial goverment, to certain freeholders and inhabitants of said town and to their successors, for the use of the town, which lands, the complaint alleges, are now the property of the town.

The complaint charges that the defendant, The New York and Manhattan Beach Railway Company, wrongfully acquired possession of the lands in controversy, and subsequently, by wrongful interference by its servants and agents with the

action of the town meeting of the town of Gravesend, and by obtaining control of the same by the action of persons not legal or qualified voters, procured a vote to be passed authorizing the lands to be conveyed to the company by the commissioners of common lands of the town, for a grossly inadequate consideration, and that a conveyance has been executed in pursuance of the action of the town meeting. The complaint further alleges that the railway company has conveyed a part of the lands to the other defendant, and that the property has been obtained by the defendants without right and is still so held by them, and demands judgment among other things that the conveyance purporting to be executed in behalf of the town be set aside, and that the defendants be adjudged to surrender possession of the premises.

It is conceded that, except for the act of 1875, the action could not be maintained. The common lands under the colonial grants belonged to and were held by the town as a corporation. (*Denton* v. *Jackson*, 2 Johns. Ch. 325 ; *North Hempstead* v. *Hempstead*, 2 Wend. 109.) The town had full power over them, having the same rights of control and disposition as any other owner has of his property, subject only to the trust for the public use under which they were held. The State had no title to the lands and no right to the possession, and independently of the act of 1875 it could maintain no action to recover them. (*People* v. *Ingersoll*, 58 N. Y. 1.) The question now presented is whether it can maintain the action under that act.

We are of opinion that an action to recover real property is not within the purview of the act. The act applies to "money, funds, credits and property," without right obtained, received, converted and disposed of, etc. The word *property* describes any estate, whether goods, money or lands, and in its general signification includes any thing capable of ownership. But the meaning of a statute is to be found by comparing all its parts, and particular words may be limited if on such comparison it appears that they were used in a limited or restricted sense. So, also, the circumstances which led to its enactment may

sometimes be considered in aid of the interpretation. (*Tonnele v. Hall*, 4 Comst. 140.) It is matter of common history that the statute of 1875 was passed in view of the fact that the city of New York had been grossly defrauded by the acts of municipal officers and others acting in collusion with them, and that large sums had been taken from the municipal treasury in the perpetration of the frauds committed. These sums the city or county, one or both of them, might sue for and recover, but resort to this remedy was embarrassed by the fact that the city and county governments were to a considerable extent under the control of the guilty participants in the fraud. This court decided that the State had no such title to the funds and property thus wrongfully embezzled and converted as would enable it to maintain an action to recover them, and the act of 1875 was passed to afford such remedy. There was no public exigency which required that a remedy by an action in behalf of the State should be provided for the recovery of the possession of real property of a town or municipal corporation, wrongfully obtained or withheld, and there is no hint in the act of an intention to provide such a remedy unless it is found in the use of the word *property* in the first section. It is to be observed that the word *property* follows the enumeration of specific kinds of personal property. The words are "money, funds, credits and property." If it had been intended that the statute should have applied to all property, real and personal of a municipal or other public corporation, obtained without right, these general and comprehensive words would naturally have been used. The word property, associated as it is with the preceding words of specific description, is to be construed as referring to property of the same general kind with that previously enumerated, upon the maxim *noscitur a sociis*.

But a consideration of other provisions of the act leads to the same conclusion. The *first* section declares that on the commencement of a suit by the State, all the money, funds, credits and property sued for, and the right of action for the same, shall be forthwith vested (if not so previously vested) in the State. It then provides for a limitation of ten years for

bringing an action by the State under the statute.    This limitation is substantially the limitation which has been applied to actions in equity for breaches of trust, but actions for the recovery of real property, according to the general statute, may be brought at any time within twenty years after the cause of action accrued.    If the statute intended to vest in the State a right to recover lands of a town or municipality, wrongfully obtained or withheld, why should there have been in respect to the period of limitation such a departure from the general policy of the law?    The *third* section provides for the disposition of the proceeds of a recovery in an action under the statute, and declares that where any money, funds, credits, property, damages or compensation - has been recovered, the court may " make such order and judgment as may be just and equitable for the disposition of the *proceeds* of any recovery in such action, so as to reinstate the lawful custody which was disturbed or impeded by the wrong complained of, or to cause application of such proceeds to be made to the objects and purposes for which such money, funds, credits and property was authorized to be raised or procured," etc.    This language is very inapt and inappropriate, if the act intended to. authorize an action for the recovery of real property.    To reinstate the lawful custody, etc., is at least an unusual use of language to describe the act of restoring possession of real property to its lawful owner.    The order which the court is authorized to make, on a recovery by the State, is one for the distribution of *proceeds* or for their application to the objects for which the money, property, etc., was authorized to be *raised or procured.* The language of this section is sensible and clear if the act is considered as relating to actions for money, credits and personal property, but is awkward, and in some particulars unmeaning, if the act applies to the recovery of real property.

The main object of the act, as is evident, was to give an additional remedy for the plundering of municipalities by faithless and venal officials, and to authorize the State to pursue the funds wrongfully abstracted from their treasuries into the hands of officials or other persons who had wrongfully obtained or received them.    But we think it would be a strained con-

struction of the statute to extend it to the recovery of real estate belonging to a municipality, the possession of which has been wrongfully acquired or is wrongfully withheld. If it is desirable to extend the act to such cases, the remedy is with the legislature.

There is another answer to the claim that the act of 1875 applies to the case. The deed sought to be set aside purports to be, and is, the formal act of the town, executed by its accredited authorities, pursuant to a vote of a town meeting regularly called and held, having authority to direct the alienation of the common lands. The wrong claimed is that the vote of the town, as recorded, was not the vote of a majority of the qualified electors, who were outnumbered and outvoted by persons procured to attend the meeting by the defendants. The interference of the State is invoked, under color of the act of 1875, to protect the town against an injury resulting from the miscarriage of the system of town meetings, as agencies for the management and control of local affairs and interests. We do not think such an interference by the State was contemplated. The people in town meetings act directly, in exercising such legislative and administrative powers as are committed to or as are possessed by towns. The remedy for unlawful interruption of or interference with the business of town meetings is ample. A city acts through its common council and executive and administrative officers, who are mere agencies of the municipality; but not so in the case of towns. The people in town meetings act in their primary, and not in a representative capacity. The act of 1875 was not intended to draw to the central authority, jurisdiction to review or revise the proceedings of towns in town meetings, or to set them aside, upon the allegation that the action of a town meeting was produced by corruption, intimidation, or violence. The system of town government may not be sufficiently guarded, but the remedy for defects is not to be found in the act of 1875.

The judgment should be affirmed.

All concur, except Miller, J., not voting, and Rapallo, J., absent.

Judgment affirmed.