| 128 | 299 |
| 131 | 567 |

WEBB *et al.* v. ARCHIBALD *et al., Appellants.*

In Banc, April 30, 1895.

1. **Will**: AFTER ACQUIRED PROPERTY: CONSTRUCTION. A will, as to the distribution of the property devised or bequeathed, is to be construed as of the date of the testator's death unless a contrary intention appears.

2. ———: ———: ———. A testatrix, by the first clause of her will, bequeathed a money legacy to her daughter K. and appointed a trustee to take possession of the same "on my death" and to invest it in land. By the second clause she devised equally to her two sons, to her daughter M. and to a grandson all her real estate, including a farm of four hundred acres on which she lived and twenty acres of land south of it. By the third clause she gave a legacy of one thousand dollars to one of her sons and provided that out of the remainder of the property her debts should be paid and that, if anything was then left it should be equally divided between her two sons and daughter mentioned in the second clause. *Held,* that the last three named devisees took under the third clause a farm which the testatrix acquired after the making of the will.

*Appeal from Carroll Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED.

*Pattison & Sebree* for appellants.

(1) William Winkler has a common law marital interest in the land affected by the decree and may, by possibility have a curtesy in it. His rights should have been affirmatively adjudicated by the court. *Dyer v. Wittler,* 89 Mo. 87; *Flesh v. Lindsay,* 115 Mo. 1. (2) The deed "offered" should have been put in evidence and incorporated in the bill of exceptions, showing that Margaret Lindsay had acquired the land affected by the

decree since the execution of her will.   Respondents do not contend that she thus acquired the land otherwise than by deed.   (3) There being no latent ambiguity on the face of the will, except as to the forty acres added to the home farm before the execution of the will, parol testimony as to her declarations and the various amounts of personal property she possessed at the time of the execution of her will and that subsequently acquired, was inadmissible.   *Bradly v. Bradly*, 24 Mo. 314; *Hockensmith v. Slusher*, 26 Mo. 237.   (4) It was inadmissible for another reason:   By the common law, a will, as to personal property, speaks from the death of the testatrix, and operates upon and affects all personal property owned at that time, unless by express provisions therein or by necessary intendment, some portion of it is excepted.   54 N. Y. 88.   (5) The polar star of construction of a will is, if possible, to arrive at the intention of the testatrix.   *Hall v. Stephens*, 65 Mo. 673; *Shumate v. Bailey*, 110 Mo. 411.   And this intention must be gathered from the "four corners" of the will, giving heed to general provisions, as manifested from the face of the will, rather than to particular clauses.   4 Kent [11 Ed.], pp. 545, 643; *Ingles v. Trustees*, 3 Pet. (U. S.) 117; *Chase v. Lockerman*, 1 Gill & Johns. 185.   (6) By the common law, a testator had not the legal capacity to dispose of after acquired real estate, but that has been changed by the statutes of this state.   *Liggat v. Hart*, 23 Mo. 127; *Applegate v. Smith*, 31 Mo. 169.   This statute has been given the same construction as those from which it has been rescripted.   33 N. Y. 563. (7) Under the provisions of these statutes, all real estate *prima facie* passes unless there are express contrary provisions, or by necessary construction to the contrary, in order to make the provisions of the whole will consistent and to carry into effect the manifest intention of the testator.   23 Mo.

*supra.* These statutes place the onus of construction and burden of proof upon those claiming in opposition to the will. *Quinn v. Hardenbrook*, 54 N. Y. (Sickles), 89. The natural and reasonable presumption is that when a will is executed the testator designed to dispose of his entire estate and does not intend to die intestate as to any of it. *Leigh v. Savage*, 1 N. J. Eq. (McArthur), 126. (8) Estate means both real and personal property. *Shumate v. Bailey*, 110 Mo. 411. "Property means both real and personal effects. 2 Redf. on Wills [3 Ed.], sec. 21, p. 127. Courts are inclined against a construction which will result in partial intestacy. 2 Redf. on Wills [3 Ed.], sec. 5, p. 116; *Gaines v. Hindley*, 57 Mo. 342; *Leake v. Robinson*, 2 Mer. 385; *Carr v. Diggs*, 58 Mo. 400.

*Morton Jourdan* for respondents.

(1) The single question for determination in this case is: Did Margaret Lindsay die intestate as to the one hundred and twenty acre tract known as the "Winfrey farm?" All other questions suggested by the brief of the appellant have been determined by the opinion filed upon the hearing of this case in division number one. The well settled and established rule in this state is, that in the construction of wills the intention of the testator must govern and control. R. S. 1889, sec. 8916; *Smith v. Hutchinson*, 61 Mo. 83; *Nichols v. Boswell*, 103 Mo. 157; *Small v. Field*, 102 Mo. 122; *Redman v. Barger*, 118 Mo. 568. (2) And that the intention of the testatrix must be gathered and ascertained from all four corners of the will. *Allison v. Chaney*, 63 Mo. 279; Jarman on Wills, p. 435; 1 Redfield, bottom p. 359; *Ringquist v. Young*, 112 Mo. 25; *Shumate v. Bailey*, 110 Mo. 415; *Long v. Simms*, 107 Mo. 519; *Schorr v. Carter*, 120 Mo. 413; Schouler on Wills, sec.

466, p. 500. (3) Hence, unless it was clearly the intention of the testatrix to devise the after-acquired real estate by the use of the word "property" in the third clause of her will, then she died intestate as to such after-acquired real estate. *Applegate v. Smith*, 31 Mo. 158. For the rule is, disinheritance will not be presumed. On the contrary, an heir can only be disinherited by an express devise or necessary implication. This rule is announced in 2 Powell on Devises, 199. And is quoted with approval, his honor, Judge Sherwood, speaking for this court in *Eneberg v. Carter*, 98 Mo. 651. (4) Her power to dispose of after-acquired property is the same as to dispose of that she possessed at the time of making the will. Hence, determining whether the after acquired real property passed by the will, the same agency of construction is to be applied as would determine whether the same land, if possessed at the time of making the will, had passed. *Liggat v. Hart*, 23 Mo. 127. (5) It is conceded that the word "property" is, when employed without limitation or restriction, sufficiently comprehensive to include both real and personal property. It has, however, been universally held that the meaning of this ("property,") or similar words, may be and is often restricted to include either the real or the personal property, *first*, by the other language used in the instrument. *Smith v. Hutchinson*, 61 Mo. 87; or, *second*, by the intention of the grantor in the division of property to make the heirs equal, as evidenced by the instrument itself. *Wheeler v. Dunlap*, 13 Mon. (Ky.) 298; *Howland v. Howland*, 100 Mass. 223; *Hale v. Audsley*, 26 S. W. Rep. 964; *Von Puhl v. Hay*, 26 S. W. Rep. 965. See, also, Jarman on Wills, p. 670; Schouler on Wills [2 Ed.], pp. 592, 593. (6) It has also been held that the word "property," associated with the preceding words of specific description, is to be construed as referring to

property of the same general character. *People v. Railroad*, 84 N. Y. 565; *Morgan v. Dodge*, 44 N. H. 263; *Woolaw v. Kenworth*, 9 Ves. 141. (7) And that a clearly expressed intention (in this will to make all her heirs equal) is not to yield to a doubtful construction to be placed upon any other portion of the instrument. *Monroe v. Jones*, 8 R. I. 527; 1 Redfield on Wills, 433.

BRACE, C. J.—This is a suit instituted by Mrs. Webb, one of the devisees and heirs at law of Mrs. Margaret Lindsay, deceased, and her husband, against the administrator and the other devisees and heirs at law of the said deceased, to obtain a construction of the last will and testament of said deceased, which, omitting the formal parts, is as follows:

"I give and bequeath to my beloved daughter, Kate Webb, the sum of thirty-seven hundred and fifty dollars to her sole and separate use, and in order to secure the same to her sole and separate use, from the control of her present or any future husband, I hereby appoint and constitute my friend, Repps B. Hudson, to receive and take possession of said thirty-seven hundred and fifty dollars, on my death, and invest the same in land—the deed for said land to be made to her, the said Kate Webb, to her sole and separate use.

"2. I give and devise to Thomas Archibald, William Archibald and Margaret Winkler, my children, and Harry Archibald, my grandchild, their heirs and assigns, all my real estate, including the farm of four hundred acres on which I now live, and twenty acres of timber land about one mile south of said farm of four hundred acres, this being all of my real estate—each of the four persons last above named to have one-fourth of said real estate or land; said land is situated in Carroll county, Missouri.

"3.   I give and bequeath to  my son,   William Archibald, one thousand dollars, for the purpose of making him even with  the other children,  on account of which they have received heretofore.   Out of the balance of my property I desire my debts to be paid, and should there be anything left, I desire it to be equally divided between  Thomas Archibald,  William Archibald and Margaret Winkler; above  named are all of my children, as I have never had any children by my present beloved husband, Clark Lindsay."

The will was executed on the sixth of March, 1885. The testatrix died in the year 1891, the owner of the real estate mentioned in the will, and of a tract of one hundred and twenty acres  in addition, called the "Winfrey Farm,"  acquired by her after the execution of the will; and of personal property of the value of several thousand dollars.

The trial court held that the said Margaret Lindsay died testate as to all her personal property, which is to be distributed according to the terms of the will; but that she died intestate as to the said real estate purchased after the date of the execution of the will, and that the same descends in equal parts to her heirs at law, the said Kate Webb, Thomas Archibald, Margaret Winkler and Harry Archibald, and decreed accordingly.  From this decree, defendants appeal, contending that the court committed error in holding that the said Margaret died intestate as to the after acquired real estate aforesaid, and this is the main question to be decided here.

I.  In the leading case of *Liggat v. Hart*, 23 Mo. 127, LEONARD, J., said: "Men know that their wills are not to take effect until they die, and they make them for the purpose of fixing the distribution of their property *from that moment*."  Since that decision, construing the first section of our statute of wills, there never has

been any question in this state but that the language of a will is to be construed as of the date of the decease of the testator, unless the contrary appears to have been his intention, and that the will operates upon all the estate of the testator, real and personal, at the time of his decease, so far as its terms are applicable, unless the intention of the testator appears to be otherwise. 1 Redfield on Wills [3 Ed.] chap, 9, sec. 1.

The language of the will in question leaves no room for doubt that the testatrix in the disposing clauses of her will was fixing the distribution of her property "from the moment of her death." The first item of her will, containing the legacy to the plaintiff, discloses this as her thought in the expression "on my death," which runs through the dispositions of the will. Nor does that language leave any room for doubt that the testatrix intended to dispose of all the property of which she was possessed at the moment of death, for, after making all the specific bequests she desired, she closed the third and last item with a residuary clause disposing of "anything left," "out of the balance of my property."

There is nothing in the language of the will, nor rules of law given for its interpretation, upon which the idea of an intestacy as to any of the testatrix's property can be predicated. There is no room in the case for the indulgence of any presumptions on account of a *disherison*. There is no *disherison* in the case. The testatrix carefully named all those who by nature had immediate claims on her bounty, and as carefully provided for them. That the provision made by her may have been unequal as between them can furnish no basis for a presumption that she intended an intestacy as to any of her property; yet, in order to sustain the trial court in its ruling, we should not only have to indulge in some such presumption, but permit it to

override, not only the foregoing well settled principles of law for the construction of the testatrix's will, but her unequivocally expressed intention as to the share the plaintiff should have in her estate; for nothing can be clearer than that it was the intention of the testatrix, not only that plaintiff should have no interest in the testatrix's landed estate, but that her husband should have no interest in such estate, or in any lands that might come to her by means of the legacy left in the will. In both respects the intention of the testatrix would be defeated by the ruling of the trial court that she died intestate as to the "Winfrey Farm."

This brings us to the only remaining question, to whom did that farm pass by the will? It passed either by the second item or the residuary clause of the third item of the will. Reading these items together it is impossible to escape the conclusion that the intention of the testatrix was to make a difference between her three children and her grandchild named therein— that there was a part of her estate in which she wished that they should all share equally, and there was a part of her estate in which she wished that only her said three children should share equally and in which her grandchild should have no share. The estate in which the four should share equally was devised by the second item. It was a landed estate. The disposing part of that item is "all my real estate." This expression, if there had been nothing more, would have been sufficient to pass all her real estate, including any that she might have acquired after the execution of the will. She did not stop there, however, but immediately, in the same item and connection, proceeded to define those terms, by giving her meaning thereof to be the "farm on which I now live" and the timber land south of it. It is not material that she may not have given correctly the number of acres therein.

There is no difficulty in identifying the land devised, and it was in these particular lands that the four were to share equally at her death. For purposes of description she referred to an existing state of things, thus giving an illustration of the exception to the general rule, hereinbefore stated, that the language of the will is to be interpreted as having been used with reference to the time of the death of the testator, the exception being, in the language of ELLSWORTH, J., in *Gold v. Judson*, 21 Conn. 616, that "wherever a testator refers to an actually existing state of things, his language should be held as referring to the date of the will, and not to his death, as this is then a prospective event. Such, it is clear, is the construction of the word *now*."

The estate in which her three children, Thomas Archibald, William Archibald and Margaret Winkler, were to share equally, but in which the grandchild Harry Archibald, was to have no part, was devised in the residuary clause of the third item of the will, and it was to be anything left of her property after her debts were paid, not included in the specific bequests— anything left, whether of real or personal property.

The estate has been administered, the debts have been paid, and according to the manifest intention of the testatrix upon the face of the will. The plaintiff's trustee is to have the sum of $3,750, to be invested for her benefit in lands, as directed in the first item of the will. Thomas Archibald, William Archibald, Margaret Winkler and Harry Archibald are to have the farm on which Mrs. Lindsay was living at the date of the execution of the will, together with the timber tract south of it in equal shares in fee simple. William Archibald is to have $1,000, to make him even on account of what had been received by the other devisees by way of advancement before the execution of the will. The

remainder of the estate, whether it be real estate or personal property, goes by the terms of the will to Thomas Archibald, William Archibald and Margaret Winkler, and with it goes "the bone of contention," the "Winfrey Farm."

The judgment of the circuit court will be reversed and the cause remanded, with directions to enter a decree construing the will in conformity with the views expressed in this opinion, GANTT, MACFARLANE and BURGESS, JJ., concurring; BARCLAY, SHERWOOD, and ROBINSON, JJ., dissenting.

BARCLAY, J. (*dissenting*).—We do not agree to the judgment of reversal, announced by the learned chief justice.

The majority of the court hold that the real estate acquired by Mrs. Lindsay, after making her will, passed to Thomas and William Archibald and Margaret Winkler by the third paragraph of that document. We dissent from that view.

None of the other points discussed in the divisional opinion (28 S. W. Rep. 81) is mentioned in the opinion of our brethren, so we assume that no error in the circuit proceedings is found on account thereof.

The ruling above stated is the sole basis for discarding the conclusion reached by the learned trial judge, so we confine our remarks to that point.

In the interpretation of wills, the first and weightiest consideration is the intention of the testator.

If the intention is plain from the language of the document, we have no right to go elsewhere to learn it.

If the terms of the instrument do not make its intent clear, resort may sometimes be had to other aids.

But it is our opinion that the paper now under review needs no such outside illumination.

By the settled construction of the modern common law, a will devising realty was presumptively held to apply to the land owned by the testator at the time it was executed, while a will of personal property was considered to speak from the date of the testator's death.

Under our positive law governing such dispositions, wills of personal and of real property alike are considered as applying to the testator's property owned at his death, in the absence of any expression of a different purpose.

Where the intent not to dispose of after acquired realty is manifest, the court will give effect to that intent, however.

Let us apply these recognized rules of law.

We notice that, by the second paragraph of Mrs. Lindsay's will, she specially designates, by short descriptions, the tracts she intended to devise, declaring that these tracts were "all" of her real estate.

That statement is twice made in that paragraph.

In the next paragraph she bequeaths to one of her sons $1,000 "for the purpose of making him even with the other children." She then directs her debts to be paid "out of the balance" of her "property." What property did she thus intend to refer to? Having expressly mentioned and disposed of all of her real estate, the "balance" she thus intended to mention was what remained after all real estate was out of view, namely her personal property, less the legacies she had made. And it was upon the remaining personal property that she intended that clause of the will to operate. This seems clear upon considering the entire document.

While it is true that the law does not presume an intestacy, where the language of a will is of doubtful import, it should be remembered also, that plain language is necessary to effect a disinheritance of any of

the heirs at law. *Davis v. Gardiner* (1723), 2 P. Wms. 187; 2 Powell on Devises, *p. 199, approved in Missouri in *Eneberg v. Carter* (1889), 98 Mo. 651.

At the present day the term "property," in the statute law (R. S. 1889, sec. 6570), in the law of wills, and in the popular understanding, normally comprehends all sorts of property, real and personal.

But the word may be so placed in speech or writing as to indicate some particular sort or kind of property, and thus to bear a more restricted meaning than it would without the context. *Woollam v. Kenworthy* (1803), 9 Ves. 137; *McKim v. Harwood* (1880), 129 Mass. 75; *People v. Railroad* (1881), 84 N. Y. 565.

Comparing the second paragraph of the will with the third, it appears evident that the testatrix designed and intended in the latter to refer only to her personal property. She did not, in our judgment, intend by that paragraph to pass title to real property or any part of it.

She intended the second paragraph as the ful expression of her purposes touching the realty. Compare *Farish v. Cook* (1883), 78 Mo. 212, and *Hale v. Audsley* (1894), 122 Mo. 316 (26 S. W. Rep. 963).

The true meaning of the will was, we believe, properly expressed by the learned circuit judge who held that it did not, because it was not intended to, reach or dispose of the real estate of the testatrix purchased after it was executed.

That view is strengthened by the terms of the legacy to William. Its object was to make him "even" with his brothers and sisters—that is, to equalize his portion. This language shows the intent of the testatrix to place her children upon a substantial equality, which the ruling now made disturbs.

The "balance" of her property—if it were held to be personalty only—would be trifling in amount, at the

time of the death of the testatrix; and if that balance were held to be the subject-matter disposed of by the third clause, intestacy as to the Winfrey farm would preserve that equality in the dispositions to her children, which we consider she designed to secure. We believe her will gives a sufficiently clear exhibition of that intention.

There may, perhaps, be another serious objection to the result reached in this court, to be found upon a close analysis of the meaning of the last three or four lines of the will; but it would, probably, serve no useful purpose to develop that objection, or to prolong these comments. Judges SHERWOOD and ROBINSON concur in this dissent to the reversal of the circuit judgment.