(81 App. Div. 530.)

BURKS v. BOSSO.

(Supreme Court, Appellate Division, Fourth Department. March 10, 1903.)

1. CIVIL RIGHTS—PLACE OF PUBLIC ACCOMMODATION—BOOTBLACK STAND —
   CORRIDOR OF OFFICE BUILDING.
   Under Laws 1895, c. 1042, § 1, providing that all persons shall be en-
   titled to equal accommodations and privileges of hotels, theaters, and all
   "other places of public accommodation or amusement," a bootblack
   stand in the corridor of an office building is included in the phrase "other
   places of public accommodation," so that the proprietor of such a stand
   is liable to a penalty for refusing, on account of his race, to black the
   shoes of a colored person.

   Nash and McLennan, JJ., dissenting.

Appeal from Monroe County Court.

Action by George W. Burks against Paul Bosso. From a judg-
ment of the County Court reversing a judgment of the Municipal
Court in favor of the plaintiff, he appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, HIS-
COCK, and NASH, JJ.

Frederick L. Dutcher, for appellant.
Thomas P. McCarrick, for respondent.

SPRING, J. The action was commenced by the appellant, a col-
ored man, to recover a penalty against the respondent for refusing
to shine the shoes of the appellant, in violation of chapter 1042, Laws
1895, section 1 of which reads as follows:

"That all the persons within the jurisdiction of this state shall be entitled
to the full and equal accommodations, advantages, facilities and privileges
of inns, restaurants, hotels, eating houses, bath houses, barber shops, theaters,
music halls, public conveyances on land and water, and all other places of
public accommodation or amusement, subject only to the conditions and limi-
tations established by law and applicable alike to all citizens."

Section 2 provides a penalty of "not less than $100 nor more than
$500 to the person aggrieved," against "any person who shall violate
any of the provisions of the foregoing section by denying to any citi-
zen, except for reasons alike to all citizens of every race, creed, or
color, the full enjoyment of any of the accommodations, advantages,
facilities or privileges in said section enumerated."

The respondent maintained a shoe polishing stand, located in the
entrance to the Powers Block, a large commercial building in the
city of Rochester, and extensively used for offices. On the 27th day
of November, 1901, the plaintiff applied to the defendant to shine
his shoes, tendering him 10 cents, the charge therefor; but the de-
fendant refused, stating he did not shine the shoes of colored men.
It is conceded the plaintiff is respectable and orderly, and the proof
shows and the verdict establishes that the only ground of refusal was
that the plaintiff is a colored man. The only question involved on
this appeal is whether the defendant is within the purview of the act
mentioned.

The liberation of the slaves and the suppression of the Rebellion
were supplemented by the adoption of the amendments to the na-
tional Constitution according to the colored people their civil rights,

and investing them with citizenship. These amendments indicated a clear purpose to secure equal rights to the black people with the white race. In appreciation of the sentiment which animated the adoption of these amendments, the Legislatures of many of the states have from time to time enacted laws intended to prohibit race discrimination, and to make effective the privileges of citizenship which the Constitution, as amended, was designed to guaranty to these unfortunate people. The whole trend of legislation on this subject in the state of New York from 1873 (page 303, c. 186) to the act under review (chapter 1042, Laws 1895) has been progressively in this direction. For instance, by chapter 692 of the Laws of 1893, amending section 383 of the Penal Code, the enumeration of the places, the privileges and enjoyment of which were not to be denied to a "person because of race, creed or color," was considerably extended, and "places of public resort" were included among those to which the prohibition applied. By the act now in force (chapter 1042, Laws 1895) the list of places to which the inhibition related was again extended, and the general clause, "and all other places of public accommodation and amusement," was added. It is plain, therefore, that the policy of the Legislature is to extend the places to which the colored people shall have equal access with the Caucassian race. We must accordingly construe this statute in the light of this manifest tendency of the Legislature. People v. King, 110 N. Y. 418, 424, 18 N. E. 245.

It is apparent, also, that the words "and all other places of public accommodations" are an enlargement of the places from which the right of access is not to be prohibited. The words themselves are of more general signification than "places of public resort." The increase in the number of places specifically enumerated carries along an extension of the phrase "other places of public accommodation," and the general policy to lessen race distinction also warrants a broad application to every part of the act.

It is also worthy of note that in the act of 1893 (Laws 1893, p. 1720, 692) the list of places mentioned was "hotels, inns, taverns and restaurants," each of which has always been peculiarly of a public character. In the present act not only the number of the places has been augmented, but their character has been extended to embrace those not generically considered as public, and yet are so intended by the act, for the enlarging clause at the end is "other places of public accommodation," etc. There is this uniformity characteristic of the places designated, however: They apply either to a place where refreshment is provided, or where attention to the person is given. In this same line is a bootblacking stand; differing, therefore, from a store or an office.

It is exceedingly difficult to draw the line between places which may be for the accommodation of the public, and those which are of a private character. The division, in a measure, must be an arbitrary one. In the present case the respondent plied his trade of bootblack in the corridor of a leading office building. He conspicuously advertised his business and solicited patronage. The place and the calling were as public as an eating house or a barber shop or a bathhouse. He did not invite any particular customers, but men and women and strangers,

81 N.Y.S.—25

whoever came, were served by him, except that he distinctly drew the line against the appellant because of his color, as the jury have found.

I apprehend that the Legislature intended to denominate each place in the enumerated list as one for public accommodation. It put its own definition to that term. There is nothing in the act warranting the suggestion that an inn was to come within that scope while a different signification was to be applied to a bathhouse or a barber shop. Then it gave extension to the designated schedule by including "other places of public accommodation," which would embrace any other place in the like category with any of those named. These are words of enlargement, not of restriction, and were inserted in the act for some purpose. They are not meaningless. The enumeration may not have included a grocery or dry goods store or news stand, as no attempt may have ever been made to exclude people from those places by reason of their color or creed. In stores and kindred places, whoever seeks to buy and has the money is permitted to purchase. If a merchant should refuse to sell his goods to a well-behaved black man who is ready to pay for his purchase, the act might be extended, if not already comprehensive enough to meet that situation.

I am mindful that a statute both criminal and penal in its import is ordinarily to be construed strictly. The legislative intent, however, must control (Tonnele v. Hall, 4 N. Y. 140, 144), and that may be gathered from the circumstances inducing the act (People v. N. Y. & Manhattan Beach Ry. Co., 84 N. Y. 565, 568). Where that intent has been unvaryingly manifested in one direction, and that in prohibition of a discrimination against a large class of citizens, the courts should not hesitate to keep apace with the legislative purpose. We must remember that the slightest trace of African places a man under the ban of belonging to that race. However respectable and worthy he may be, he is ostracized socially, and, when the policy of the law is against extending the prohibition to his civil rights, a liberal rather than a narrow interpretation should be given to enactments evidencing the intent to eliminate race discrimination, as far as that can be accomplished by legislative intervention. Under the construction which has been given to the act in the county court, a colored man is entitled to have his shoes polished in a barber shop if that business is carried on in the shop. The shining of shoes is an adjunct of the shop, and consequently a privilege which he may not be debarred from enjoying. If, however, the chair of the bootblack is on the street outside, or in a corridor leading to the shop, the color line may be drawn. I apprehend no such narrow construction need be given to an act deeply affecting the civil rights of a race of people who are citizens of the state.

In the Municipal Court the question whether this was a place of public accommodation was submitted to the jury. To be sure, there was no conflict in the evidence on this branch of the case, but whatever inferences may be drawn from the surroundings and situation may now be regarded as settled in favor of the plaintiff.

The judgment of the County Court should be reversed, with costs of this appeal, and that of the Municipal Court affirmed, with costs. So ordered.

ADAMS, P. J., concurs in opinion. HISCOCK, J., concurs. NASH, J., dissents in opinion in which McLENNAN, J., concurs.

ADAMS, P. J. (concurring for reversal). This case, fortunately, is divested of all extraneous considerations which might possibly have a tendency to obscure or affect the real question at issue. The plaintiff is concededly a decent, reputable, and respected citizen of the city of Rochester; while the defendant, it is equally apparent, was pursuing his avocation as a polisher of shoes in a public building, up to a certain period, in an orderly and legitimate manner. On the 27th day of November, 1901, the plaintiff presented himself at the defendant's shoeblacking stand, and, tendering him the customary fee for such service, requested him to blacken his shoes, which tender and request the defendant refused, and placed his refusal solely upon the ground that the plaintiff was a colored man. We have, therefore, to deal with the simple question of whether or not the defendant, by such refusal, violated either the letter or spirit of the provisions of chapter 1042 of the Laws of 1895, entitled "An act to protect all citizens in their civil and legal rights."

It is a matter within the knowledge of the most casual student of the history of our own times that this statute was enacted to prevent what was deemed by the Legislature to be an unjust discrimination in business relations against a certain class of people, upon whom the full rights of citizenship had but recently been conferred; and it seems hardly necessary to suggest that, so long as this act remains upon the statute book, its due observance in both letter and spirit is demanded by every consideration of loyalty and deference to existing conditions, whatever may be the views of individuals as to its propriety or expediency. Nor do I think that courts are required, in giving construction to an act of this character, to resort to technicalities or strict rules of interpretation; for, while it is undoubtedly penal in its nature, it is none the less entitled to receive such a construction as shall accord with the obvious intent of the Legislature, to be ascertained not only by the language of the act itself, but also by the circumstances attending its enactment. People v. N. Y. & M. B. Ry. Co., 84 N. Y. 265–268. This view of the case, it is proper to say, has been duly considered and elaborated in the principal opinion; and while I unhesitatingly concur in the conclusion therein reached, as well as in the course of reasoning by which that conclusion is reached, it seems to me desirable to advert with a little more particularity to one feature of the case, which, in my judgment, is deserving of somewhat more extended consideration.

The language of section 1 of the statute in question is:

"That all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating houses, bath houses, barber shops, theaters, music halls, public conveyances on land and water and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens."

And this is followed by section 2, which specifies the penalty to be imposed for any violation of the statute.

Now, it must be conceded that the act does not in express terms confer upon the plaintiff either the "full and equal accommodations and privileges" of a bootblacking establishment, or provide that any owner of such an establishment who shall deny to any citizen, except for reasons applicable alike to all citizens of every race, creed, or color, and regardless of race, creed, or color, the full enjoyment of any of the accommodations, advantages, facilities, or privileges thereof, shall suffer the penalty prescribed thereby; but it is to be observed that after enumerating certain places of amusement and public accommodation, including hotels, bathhouses, and barber shops, the privileges of which the plaintiff, in common with all other citizens, shall be entitled to enjoy, the act contains these additional and very comprehensive words "and all other places of public accommodation or amusement." Confessedly, therefore, the decision of this case depends entirely upon the construction to be given to this particular sentence. It is a familiar rule of construction that where a statute, after specifically mentioning the places upon which it confers or to which it denies certain privileges or powers, contains words of similar import as those to which attention has just been directed, it shall be deemed to include all other places of like character to such as are specifically mentioned. Matter of Hermance, 71 N. Y. 481; People v. N. Y. & M. B. Ry. Co., supra. And taking this rule for our guide, together with all the circumstances existing at the time of the passage of the act in question, the intention of the Legislature is, I think, quite clear. A bootblack's outfit is neither a hotel nor a barber shop, it is true; but it is almost invariably an adjunct to each, and it is quite as much a place of public accommodation as either. A person patronizes the former in order that he may avail himself of the opportunity which it affords for rest and refreshment of the body, and, as incidental thereto, of such provision for his personal appearance as will enable him to make himself presentable and comfortable. He also goes to a barber shop for a somewhat similar purpose, and it will hardly be contended, I assume, that, if the defendant's stand had been appurtenant to either a hotel or a barber shop, he could have denied the plaintiff its privileges without violating the very language of the statute. How, then, can it with any propriety be said that because it happened to be upon the sidewalk in front of a hotel, or in a hall just outside of a barber shop, he could refuse its facilities and privileges to a patron because of the latter's race, creed, or color, without rendering himself equally amenable to the penalty imposed by the statute? It seems to me that it requires but this simple statement of the proposition to make it perfectly apparent that the defendant's business is, to a somewhat limited extent, perhaps, but to all intents and purposes, as much a place of public accommodation as either a hotel or a barber shop, and that it is certainly sufficiently so to bring it within the clear intent of the Legislature when it so framed the act in question as to embrace "all other places of public accommodation," and that consequently the same rigid rules of construction should not be resorted to here as are ordinarily applied to statutes of a penal or criminal nature, and in which the legislative intent is not so clearly manifested. For this

reason, as well as for those stated in the opinion of Mr. Justice SPRING, I vote for a reversal of the judgment and order appealed from.

SPRING and HISCOCK, JJ. concur.

NASH, J. (dissenting). The plaintiff recovered judgment against the defendant in the Municipal Court of the city of Rochester for $100 and costs, for the defendant's refusal to shine his shoes on account of his color. The judgment was reversed by the County Court. The defendant held himself out as a bootblack, and had chairs in the corridor of the Powers' Block, a commercial building, where he rented space for his business of polishing shoes. The sole question here is whether a bootblack stand is a place of public accommodation, within the provisions of chapter 1042 of the Laws of 1895, entitled "An act to protect all citizens in their civil and legal rights," the first section of which reads as follows:

"Section 1. That all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of inns, restaurants, hotels, eating houses, bath houses, barber shops, theatres and music halls, public conveyances on land and water, and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law, and applicable alike to all citizens."

A bootblack chair or stand, in and of itself, would not be regarded as a "place of public accommodation," within the meaning of the phrase as it is ordinarily used and understood. But it is insisted that a chair in which to shine shoes is as much a place of public accommodation as a barber shop, and this is the proposition upon which the appellant rests his contention. It may be conceded for the purpose of the discussion that a chair in which to black shoes is as much a place of accommodation as a barber's chair. A barber shop is something more than a bootblack stand, and yet it is not a place of public accommodation, in the sense in which the phrase is used. In the sense that a barber serves his patrons, a bootblack is like a barber, although their places of business are not alike; but neither place of business can properly be designated as a place of public accommodation, except as every place to which the public is expressly or impliedly invited, and are served, either as patrons or purchasers, such as soda fountains, cigar stands, news stands, dry goods stores, or groceries, may be so designated. In the widest sense, they are all places of accommodation, but not, in the restricted sense of the phrase as used in the statute, places of public accommodation.

Both parties invoke the rule for the construction of statutes, that, where general words follow specific words designating certain special things, the general words are limited to cases of the same general nature as those which are specified. People v. Richards, 108 N. Y. 137, 15 N. E. 371, 2 Am. St. Rep. 373; People v. N. Y. & M. B. Ry. Co., 84 N. Y. 565; Matter of Hermance, 71 N. Y. 481. Here the specific words which precede the general words are not all of the same general nature, and are followed by general words of different signification. It is plain, therefore, that the latter must each be lim-

ited in its application to the preceding specific words to which it pertains. The phrase "all other places of public accommodation" must be held to be limited in its application to the places specifically named, and which are known as "places of public accommodation," such as inns, restaurants, hotels, and eating houses; and "all other places of public amusement," to theaters and music halls.

The statute has not, in respect of the matter here under consideration, received construction in the courts of this state; but in Cecil v. Green, 161 Ill. 265, 43 N. E. 1105, 32 L. R. A. 566, it was sought to bring the act of the defendant, who was engaged in the drug business, and, in connection therewith, kept for sale cherry phosphate, etc., and had refused to serve soda water to the plaintiff on account of his color, within the provisions of a statute of Illinois (Laws Ill. 1885, p. 64) which provided that all persons should be entitled to the full and equal enjoyment of the accommodations, advantages, facilities, and privileges of inns, restaurants, eating houses, barber shops, public conveyances on land or water, theaters, and all other places of public accommodation and amusement. It will be observed that barber shops are among the places mentioned which preceded the phrase "and all other places of public accommodation." The court there said, referring to soda fountains:

"Such places can be considered places of accommodation or amusement to no greater extent than a place where dry goods or clothing, boots and shoes, hats and caps, or groceries, are dispensed. The personal liberty of an individual in his business transaction, and his freedom from restriction, is a question of the utmost moment; and no construction can be adopted by which an individual right of action will be included as controlled within a legislative enactment, unless clearly expressed in such enactment, and clearly included within the constitutional limitation on the power of the Legislature."

There can be no place of greater public necessity, except it be an inn or hotel for the accommodation of travelers, than a drug store kept open night and day for the accommodation of the public; and yet it cannot be regarded as a place of public accommodation, within the meaning of the statute, unless places for the sale and furnishing of provisions and clothing, and places of a like nature, are included.

It is urged that the legal effect of the decision of the court below would be that one might enter a barber shop, in which there might be maintained, as an adjunct thereto, a shoe polishing stand, and be refused service at such stand on account of color, in which event the proprietor of the barber shop would be violating the statute, while one maintaining a stand in the entranceway to a large commercial building, and depending upon the custom of the public indiscriminately, can with impunity refuse service to an applicant on account of color. Doubtless the refusal of such service by a barber maintaining a bootblack chair would be within the inhibition of the statute, not because the bootblack chair could be held to be a place of public accommodation, but by force of the provision that all persons shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of the barber shop. The larger hotels are provided with bootblack chairs, news stands, cigar stands; and, under the statute, such hotels as happen to have them would be, without doubt, required to permit guests to avail themselves of these accommodations, advantages, facilities, and privileges. They could not other-

wise be required, as only food and lodging can be demanded at an inn; but, if such accommodations are provided, all who become guests of the hotel would be equally entitled to their full enjoyment—not, however, by others than such as become guests. The proprietor of a hotel would not be required to allow his bootblack chair to be filled, or his news or cigar stands to be overrun, with patrons not guests of the hotel.

I agree with the suggestion of my associates that a liberal, rather than a narrow, interpretation should be given to the enactments evidencing the intent to eliminate race distinction as far as that can be done by legislative intervention. Therefore, in enforcing the provisions of the statute as to the facilities and privileges which should be furnished, and the manner in which it should be done, in the places designated, the statute should receive a liberal and effective interpretation. But in the interpretation of the statute for the purpose of ascertaining the legislative intent as to the places which are within its provisions, regard must be had to known and settled rules of construction. The statute is highly penal. One who violates its provisions is not only liable to prosecution in a civil action at the suit of the person aggrieved, but the violation of the provisions of the statute is a crime subjecting the offender to fine and imprisonment. It requires the reference to but a single authority to show that the interpretation of the statute in accordance with the contention of the appellant would be an entire disregard of the principle of construction applicable to penal statutes. In People v. Phyfe, 136 N. Y. 554, 32 N. E. 978, 19 L. R. A. 141, it was held that purely statutory offenses cannot be established by implication, and that acts otherwise innocent and lawful do not become crimes unless there is a clear and positive expression of the legislative intent to make them such. Judge Maynard, writing for the court, said:

"We express no opinion as to the extent to which the sovereign power may go in restricting the exercise of what are termed the natural rights and privileges of the individual parties to the social compact, or how far their freedom of action may be controlled by statutory regulations. We are required here to apply that principle of construction which is coeval with municipal law, that purely statutory offenses cannot be established by implication, and that acts otherwise innocent and lawful do not become crimes unless there is a clear and positive expression of the legislative intent to make them criminal. The citizen is entitled to an unequivocal warning before conduct on his part which is not malum in se can be made the occasion of a deprivation of his liberty or property."

Here, by implication, the defendant is sought to be brought within the provisions of the statute, and mulcted not only in heavy damages, but adjudged guilty of a crime.

The judgment should be affirmed.

McLENNAN, J., concurs.