THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOHN F. O'BRIEN et al., Appellants.

Fraud — pleading — action to recover moneys alleged to have been fraudulently obtained from state under contracts to furnish supplies to state prisons — allegations of complaint examined and held sufficient as to two causes of action but insufficient as to the third.

1. A contractor who furnishes one article and renders verified bills for a different and superior article and by that means induces the warden of a prison to pay the price of the article as billed in the belief that it had been furnished is liable in an action for fraud and deceit for the damages thus sustained by the state, irrespective of how the clerk of the prison (Prison Law, § 136; Cons. Laws, ch. 43) may have performed his duties.

2. The adverbs "wrongfully, fraudulently and unlawfully" add nothing to a complaint in the absence of some fact stated to justify the conclusion that the act was wrongful, fraudulent or unlawful.

3. Although it is the rule that "the mere general allegations of fraud or conspiracy are of no value as stating a cause of action," yet an intent to defraud is fairly to be inferred from an averment that claims knowingly false in respects stated were fraudulently presented to a state officer for payment.

4. On examination of the allegations of a complaint setting out three causes of action based upon the presentation and obtaining payment of fraudulent claims against the state, held, that the averments were sufficient as to two of the causes of action but insufficient as to another.

*People* v. *O'Brien*, 157 App. Div. 119, modified.

(Argued June 5, 1913; decided October 31, 1913.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 21, 1913, which reversed an order of Special Term granting a motion by defendants for judgment on the pleadings and denied said motion.

The following questions were certified:

" 1st.  Does the first count of the complaint set forth a cause of action ?

" 2d.  Does the second count of the complaint set forth a cause of action ?

" 3d.  Does the third count of the complaint set forth a cause of action ? "

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edgar T. Brackett* and *Royal Corbin* for appellants. The contract for the purchase of the coal as alleged in this cause of action is entirely an executory one.  It was to furnish coal after the making of the contract, and the plaintiffs, by the proper officers, had authority upon the delivery of the coal to reject it as not coming up to the terms of the contract, had the right to refuse delivery and to refuse payment. (*Fletcher* v. *Peck*, 6 Cranch, 87; *Farrington* v. *Tennessee*, 95 U. S. 679; *Justice* v. *Lang*, 42 N. Y. 493; 2 Kent's Comm. 449; *Fox* v. *Kitton*, 19 Ill. 519; *Walkins* v. *Migen*, 118 Ga. 372; *Keokuk* v. *F. W., etc., Co.*, 90 Iowa, 67; *Hatch* v. *Standard Oil Co.*, 100 U. S. 124; *Fukenwider* v. *Rowan*, 136 Ala. 287; *McDonald* v. *Hewitt*, 15 Johns. 349; *Fozel & Co.* v. *Brubaker*, 122 Penn. St. 7; *McFadden* v. *Henderson*, 128 Ala. 221; *Coplay Iron Co.* v. *Pope*, 108 N. Y. 232.) The state, in its contracts with individuals, must be judged and must abide by the rules which govern similar cases between individuals. (*People* v. *Stephens*, 71 N. Y. 527; *Danolds* v. *State*, 89 N. Y. 36; *Baird* v. *Mayor, etc.*, 96 N. Y. 567; *French Republic* v. *Vichy*, 191 U. S. 427.)  The state fully accepted the coal in question by its proper officers, and paid for the same after full knowledge of its character, and, therefore, it cannot now maintain an action based on the claim that it was defrauded by the quality of the coal delivered. (*Adams* v. *Sage*, 28 N. Y. 103; *Brown* v. *Leach*, 107 Mass. 364; *Schumaker* v. *Mather*, 133 N. Y. 590; *Slaughter* v. *Gerson*, 13 Wall. 379; *Cop-*

*lay Iron Co.* v. *Pope,* 108 N. Y. 232; *Studer* v. *Bleistein,* 115 N. Y. 316; *Fairbank* v. *Metzger,* 118 N. Y. 260; *Meagley* v. *Hoyt,* 125 N. Y. 771; *Mason* v. *Smith,* 130 N. Y. 474; *Waeber* v. *Talbot,* 167 N. Y. 48.) As to the second cause of action the complaint should be dismissed. The only allegation of fraud as to the contract is a conclusion of law that they fraudulently and unlawfully induced the warden to enter into a written contract. Whether any contract entered into was induced by fraud depends upon the facts, and if dependent upon facts the facts must be alleged. (*Cooper* v. *Goldman,* 76 N. Y. 289; *Wood* v. *Amory,* 105 N. Y. 278; *Knowles* v. *New York,* 176 N. Y. 430; *Reed* v. *Clark,* 47 Hun, 410; *Riddle* v. *Bank,* 145 App. Div. 207.) The rights of the parties were fixed by the contract made between them and the performance by the defendants of the part of the contract to be performed by them. The contract having been fulfilled by the delivery of the coal, no false statement made by the defendants to the warden to induce him to pay the money that was actually and honestly due to them, even if they were made, can have the slightest effect on the situation. (*Thompson* v. *Menck,* 2 Keyes, 82; *Deobold* v. *Oppermann,* 111 N. Y. 531.)

*Thomas Carmody, Attorney-General (James A. Parsons* of counsel), for respondent. The complaint in this action states facts sufficient to constitute a cause of action. (Code Civ. Pro. § 1969; *People* v. *Ingersoll,* 58 N. Y. 1; *People* v. *Tweed,* 63 N. Y. 202; *People* v. *N. Y. & M. D. Ry. Co.,* 84 N. Y. 565.) The action is to recover the money paid to the defendants as an over-payment for the coal delivered. It is in effect an action to recover money had and received, and the money having been wrongfully received, there is an implied contract to repay the same. The gravamen of the complaint is the receipt, possession and unjust detention of moneys and the action is an action on contract. The allegations in

the complaint, that the money was obtained upon false, fictitious and fraudulent bills presented, is not so much a part of the cause of action as a description of the method of the wrongful obtaining of the money. (*People* v. *Wood*, 121 N. Y. 522; *People* v. *Peck*, 57 How. Pr. 315; *People* v. *Sutherland*, 207 N. Y. 22.) Section 1969 was enacted for the purpose of enabling a recovery in just such a case as the one at bar. (*People* v. *Ingersoll*, 58 N. Y. 1; *People* v. *Tweed*, 63 N. Y. 202; *People* v. *Wood*, 121 N. Y. 522; *People* v. *Peck*, 57 How. Pr. 315.) The acceptance and use of the coal delivered was not a waiver on the part of the state. (*Nelson* v. *Mayor, etc.*, 131 N. Y. 4; *Village of Fort Edward* v. *Fish*, 156 N. Y. 363.)

MILLER, J. While the defendants have interposed a verified answer, the sufficiency of the complaint must be tested as upon a demurrer. The plaintiff has attempted to state three causes of action, the material allegations of which aside from the formal matters may be briefly summarized as follows:

1. That between the first day of October, 1903, and the first day of May, 1907, the defendants from time to time furnished to Clinton Prison coal to the amount of about 32,943 tons and presented verified claims therefor as pea coal to the agent and warden, which claims were to the knowledge of the defendants false and fraudulent in that of the coal so furnished about 16,133 tons was of an inferior quality and grade and of the value of one dollar per ton less than pea coal and that the agent and warden relying upon said false and fraudulent claims and believing the same to be true from time to time made payments on said claims as and for pea coal.

2. That at various times between April, 1907, and June, 1908, proposals were advertised for by the department of prisons of the state of New York for the furnishing of egg anthracite coal for use at Sing Sing Prison; that pursuant to said advertisement the defendants made pro-

24

posals and bid for the furnishing of egg anthracite coal at $4.75 per gross ton and that said proposals and bids were accepted by the prison department; that the defendants, "with intent to cheat and defraud the People of the State of New York, wrongfully, fraudulently and unlawfully, and contrary to the terms of their bids and proposals, caused and induced the agents and wardens of said Sing Sing Prison to enter into written contracts with the defendants for the delivery of grate coal, the same being coal of an inferior and cheaper grade and of a value of thirty-five cents per ton less than egg coal, with intent to and thereby defrauding the People of the State of New York, and that in pursuance thereto the defendants from time to time during said period did deliver to Sing Sing Prison grate coal to the amount of 11,085 tons; that the defendants from time to time during said period wrongfully, unlawfully and knowingly presented claims to the wardens and agents of said Sing Sing Prison for said coal so furnished and wrongfully and unlawfully received pay therefor at the rate of $4.75 per ton, the price bid for egg coal, the same being thirty-five cents per ton in excess of the value of the grate coal so furnished."

3. That on or about the first day of May, 1909, the agent and warden of Sing Sing prison entered into a contract in writing with the defendants whereby the latter promised and agreed to deliver 5,000 tons of egg anthracite coal at the agreed price of $4.75 per gross ton, and that the defendants from time to time between the first day of May, 1909, and the first day of May, 1910, delivered to Sing Sing Prison 6,050 tons of grate coal, the same being coal of an inferior quality and of a value at that time of fifty-five cents less than egg coal, and from time to time during said period presented to the agent and warden claims for egg coal, which claims were knowingly false, fraudulent and unlawful in that the coal furnished was not egg coal, but was grate coal of an inferior quality and of less value as stated aforesaid, and

that the defendants "wrongfully, fraudulently and unlawfully caused and induced said agents and wardens to pay said false and fraudulent claims."

It is urged on behalf of the People that this is an action pursuant to section 1969 of the Code of Civil Procedure to recover the money of the state received without right by the defendants and is virtually an action on implied contract to repay the same. That section was taken from chapter 49 of the Laws of 1875, and was the result of an ineffectual attempt of the attorney-general to maintain an action to recover moneys of the city of New York wrongfully obtained by venal officials and others. (See *People* v. *Ingersoll,* 58 N. Y. 1; *People* v. *Tweed,* 63 N. Y. 202; *People* v. *N. Y. & Manh. Beach Ry. Co.,* 84 N. Y. 565.) The statute merely gave an additional remedy. It did not create a new cause of action. This complaint must be sustained, if at all, as one stating a cause of action in tort.

The statute, section 136 of the Prison Law (Cons. Laws, ch. 43) makes it the duty of the clerk of each prison among other things " to keep books of account of the financial transactions of the prison   *   *   *   to enter each bill taken by the agent and warden of the prison in the books of the prison at the time of the receipt of the articles mentioned in such account, and in case the articles received do not agree in all respects with the invoice " to notify the agent and warden of such discrepancy and note in his books the discrepancy, whether in weight, quantity or quality; and it is urged that the clerk is presumed to have done his duty and that in the absence of some averment to overcome that presumption the coal delivered must be deemed to have been accepted as answering the description of the coal contracted to be sold. The difficulty with that argument is that the warden is required subject to the direction and supervision of the superintendent of state prisons to conduct all fiscal transactions and dealings on account of each prison. (Prison Law, § 132.) He is to supply provi-

sions and other suitable articles for the maintenance and supply of the prisons under his charge either by contract or by purchase as directed by the superintendent of state prisons. (§ 132.) He is required to take bills for all goods purchased at the time of the purchase and verified bills at the time of making payments therefor. (§ 133.) It is alleged in the first cause of action that the agent and warden relying upon the claims presented and believing the same to be true made certain payments on said claims " as and for pea coal."

We entertain no doubt that a contractor, who furnishes one article and renders verified bills for a different and superior article and by that means induces the warden to pay the price of the article as billed in the belief that it had been furnished, is liable in an action for fraud and deceit for the damages thus sustained by the state, irrespective of how the clerk may have performed his duties. The only difficulty we have with respect to the first cause of action is whether it is sufficiently alleged that the defendants thus obtained the price of pea coal, but we think that under the liberal rule of construction which now prevails that is to be inferred from the averment that payments were made on such claims " as and for pea coal."

There is no averment in the second cause of action that the agent or warden was in any way deceived or misled or that he colluded with the defendants to defraud the state and, indeed, there is no charge in the entire complaint of any wrongful act on the part of the agent or warden. The second cause of action must stand upon the bare fact that proposals were advertised, received and accepted for one kind of coal and that thereafter a contract was entered into for the delivery of a different kind of coal of an inferior grade at the same price. The adverbs " wrongfully, fraudulently and unlawfully " add nothing to the complaint in the absence of some fact stated to justify the conclusion that the act was wrong-

ful, fraudulent or unlawful. As already stated the warden is to obtain supplies by contract or purchase as directed by the superintendent of state prisons. There may have been valid reasons occurring after the acceptance of the bid for not entering into a contract and it does not necessarily follow from the facts alleged in this complaint as the majority of the Appellate Division thought that the agent and warden was either in collusion with the defendants or was overreached by them.

For the third cause of action the complaint alleges the making of a contract for a particular quality or grade and the delivery of an inferior grade. It also alleges that claims for the grade contracted for were presented, but, unlike the first cause of action, it does not allege that the agent and warden relied upon or was deceived by said false claims. If the warden acting honestly and without being misled accepted delivery as in performance of the contract the state would undoubtedly be bound precisely as an individual would be bound under the same circumstances. (*People* v. *Stephens*, 71 N. Y. 527, 549; *Danolds* v. *State of New York*, 89 N. Y. 36, 44; *Baird* v. *Mayor, etc., of New York*, 96 N. Y. 567, 601.) It does not necessarily follow that a public official who accepts delivery of a different article than that contracted for is either deceived or acts corruptly and collusively. There might be reasons to justify such action.

However, there is a view of the matter in which the complaint under this head may be considered as stating a cause of action. Section 1872 of the Penal Law (Cons. Laws, ch. 40) makes it a crime "knowingly, with intent to defraud" to present "for audit, or allowance, or for payment, to any officer or board of officers of the State * * * any false or fraudulent claim, bill, account, writing or voucher, or any bill, account or demand, containing false or fraudulent charges, items or claims." If the facts alleged bring the case within that section it is not important that there is a failure to allege all the facts essential

to an action for fraud and deceit.    In that view the action is one by the state to recover money unlawfully obtained from it, which we have no doubt may be maintained. The facts alleged are that claims for egg coal were presented when in fact grate coal of an inferior quality and value had been delivered, that such claims were knowingly false and that the defendants induced the agents and wardens to pay them.    Is the characterization of those acts as fraudulent sufficient to justify the inference that they were done "with intent to defraud?"

It is the rule that "the mere general allegations of fraud or conspiracy are of no value as stating a cause of action." (*Knowles* v. *City of New York*, 176 N. Y. 430, 437.)    However, the complaint is not confined to general allegations.    While it would have been much better pleading specifically to aver the intent with which the act was done, we are of the opinion that an intent to defraud is fairly to be inferred from an averment that claims, knowingly false in respects stated, were fraudulently presented.    The distinction between fraudulently presenting knowingly false claims, and presenting knowingly false claims with intent to defraud is too nice.

The defendants' motion should have been denied as to the first and third causes of action and granted as to the second, and the order of the Appellate Division and the order and judgment of the Special Term should be modified accordingly, without costs.    The first and third questions certified should be answered in the affirmative and the second in the negative.

CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK, CHASE and HOGAN, JJ., concur.

Ordered accordingly.