## UNITED STATES v. REPUBLIC BAG & PAPER CO.

### (Circuit Court of Appeals, Second Circuit.   March 14, 1918.)

### No. 170.

1. UNITED STATES ☞70(1)—CONTRACTS—CONSTRUCTION—PROVISIONS RESPECTING QUANTITY.

Proposals by the Public Printer for the purchase of print paper also contained the advertisements inviting bids which set forth in a schedule the estimated quantity of each kind of paper required.  Both advertisement and proposal provided that the successful bidder would be required to enter into a contract to furnish the quantity required, "whether more or less than the estimates."  Defendant's bid was accepted, and it entered into a contract, prepared by the government, requiring it for the term of six months to "furnish * * * so much of the estimated quantity as may be ordered by the party of the second part."  *Held*, that by the terms of the contract the quantity defendant was required to furnish was limited by the estimate as a maximum, and that, whatever the reason for the variance between the contract and proposal, the contract must govern as determining the obligation of defendant.

2. SALES ☞71(3)—CONTRACTS—CONSTRUCTION—"MORE OR LESS."

The words "more or less," used in a contract of sale in connection with an estimated quantity, when the only measure is the estimate itself, allow only a small latitude of variation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, More or Less.]

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by the United States against the Republic Bag & Paper Company.  Judgment for defendant, and plaintiff brings error.  Affirmed.

Writ of error to a judgment dismissing a complaint at law upon demurrer.

The complaint alleged that the plaintiff, through the Public Printer, on March 1, 1916, entered into a contract with the defendant for supplying it with a certain part of the paper for public printing and binding; that before May 10, 1916, the defendant had delivered to the Public Printer 270,000 pounds of paper, and had accepted orders for 80,000 pounds more; and that it finally delivered 338,716 pounds all told.  It further alleged that the needs of the plaintiff for printing and binding work for six months from March 1, 1916 (the term of the contract), were over 965,500 pounds; that the defendant refused to deliver more than 338,716 pounds; and that the plaintiff was obliged to go into the market and buy at a higher price, to the damage of the plaintiff in the sum of over $11,000.

The contract provided that the defendant should furnish "so much of the estimated quantity [of paper] as may be ordered by the party of the second part, whether more or less than the estimate stated in the proposal, of the kind and quality of paper called for and described under the standard sample specifications for lot 1."

Attached to the contract were the proposals upon which bids had been taken, and attached to this proposal were the various schedules describing the paper to be furnished.  Schedule No. 1 read as follows: "300,000 pounds white news print paper 25x36", 36-pound basis," etc.  The contract ran for a period of six months from March 1, 1916.

The proposals on which the bid was made contained also the advertisement upon which bids had been invited.  This advertisement contained, among other things, the following: "Contracts will be entered into for supplying the

quantities required, whether more or less than the estimates, for a period of six months or one year commencing March 1, 1916." The estimated quantities were then set forth below. The proposals also contained some 49 instructions. to the bidders describing the conditions under which the bidders might bid and the specifications of the terms used in the schedules describing the quality and quantity. These were divided into four main divisions, the first 12 instructions under the head of "Proposals," the next 14 under the head of "Quantity and Quality," the next 8 under the head of "Packing," the next 4 under that of "Delivery," and the remainder under the heading "Contract." The first instruction under the head of "Quantity and Quality" read as follows: "No. 13. The subjoined schedule specifies the quantity as nearly as may be estimated and the quality of each kind of paper required, but the contractor must furnish the quantity which may be needed, whether more or less than the estimate." The first provision under the subhead "Contract" read: "No. 39. The successful. bidders will be required to enter into a contract to furnish the quantity required, whether more or less than the estimates, and to conform in every particular to the instructions, schedule, specifications, and standard samples as fixed upon by the joint committee of printing furnished by the Public Printer."

Francis G. Caffey, U. S. Atty., of New York City (Julian Hartridge, of. New York City, of counsel), for the United States.

Joseph G. Cohen, of New York City (Walter C. Noyes, of New York City, of counsel), for defendant in error.

Before WARD, Circuit Judge, and LEARNED HAND and MAYER, District Judges.

LEARNED HAND, District Judge (after stating the facts as above). [1] The first question is what the literal meaning of the words is. The express undertaking of the defendant is that it shall "furnish * * * so much of the estimated quantity as may be ordered by the party of the second part [the Public Printer], whether more or less than the estimates stated in the proposal." This is the only language in the contract touching quantity at all. If the phrase had been omitted "whether more or less than the estimates stated in the proposals," we take it that there could have been no question that the undertaking would have been limited by the estimate as a maximum.

[2] The plaintiff urges that words like "more or less," when used of an amount otherwise ascertainable than by the estimated quantity, do no more than indicate what the parties at the time honestly suppose the quantity will be, and. this is quite true. Such words do not themselves constitute any measure of quantity, since by hypothesis that is defined by other terms. Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622; Marx v. American Malting Co., 169 Fed. 582, 95 C. C. A. 80 (semble); Grant v. United States, 7 Wall. 331, 19 L. Ed. 194. Yet, when the only measure is the estimate itself, they allow only a small latitude of variation, much within that here asserted. Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366; Pine River Logging Co. v. United States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164; Hadley Dean Plate Glass Co. v. Highland Glass Co., 143 Fed. 242, 74 C. C. A. 462. In the contract proper there was no outside measure but the estimated quantity. There might have been, it is true, if the language had been "all paper required by the party of the second part, whether more or less than the estimates stated in the pro-

posal," but it was not that. On the contrary, it was "so much of the estimated quantity," thus making the outside measure the estimated quantity, and not the requirements of the Public Printer. Therefore, taken by itself, the contract seems to us to support the defendant's contention.

The plaintiff, however, very properly argues that the contract is not to be taken by itself, but in conjunction with the Public Printer's proposal. In this proposal appear not only an advertisement, but certain definitions of the quantity to be delivered. The advertisement reads:

"Contracts will be entered into for supplying the quantities required, whether more or less than the estimates."

### No. 13 of the "Instructions" provides:

"The subjoined schedule specifies the quantity as nearly as can be estimated, * * * but the contractor must furnish the quantity which may be needed, whether more or less than the estimate."

### No. 39 provides:

"The successful bidders will be required to enter into a contract to furnish the quantities required, whether more or less than the estimates."

If these stood alone, we should be disposed to say that the measure adopted was the quantity "required" or "needed," and to hold that Brawley v. United States, supra, applied. That would invite the other questions raised, affecting the validity and mutuality of the contract. Since, however, we have two conflicting clauses to construe, it seems to us we must adopt that which occurs in the actual undertaking of the parties, rather than in their preliminary negotiations. Therefore we conclude that the contract proper should prevail.

Just why the contract varied from the proposals we cannot, of course, surmise, but we cannot with justice disregard the fact that it did vary, and that the variation was big with consequences which, had the defendant been faced with them, we should not assume it would have accepted. If an ambiguity has resulted, we may fairly apply the canon contra proferentem, and throw the burden of interpretation upon him who by the variation put the matter in doubt.

Judgment affirmed.

WARD, Circuit Judge (dissenting). The court construes the contract as one for the estimated quantity of paper as a maximum, whereas it seems to me to be one for the government's actual requirements. The difference is one of construction of writings.

Section 3 of Act Jan. 12, 1895, c. 23, 28 Stat. at L. 601 (Comp. St. 1916, § 6957), requires the Public Printer to advertise—

"for sealed proposals to furnish the government with paper, as specified in the schedule to be furnished to applicants by the Public Printer, setting forth in detail the quality and quantities required for the Public Printer."

### The advertisement of the Public Printer stated:

"Contracts will be entered into for supplying the quantities required whether more or less than the estimates for a period of six months or one year commencing March 1, 1916.

250 F.—6

"The approximate estimated quantities for one year set forth in detail in the schedule comprise 305,000 pounds news print paper."

The Republic Company's proposal was—

"to supply the Government of the United States with so much of the paper more or less embraced in the following schedule as may be required for the public printing and binding from March 1, 1916, to February 28, 1917, or for a period of six months from March 1, 1916."

The form of proposals was accompanied by instructions as follows:

"No. 13. The subjoined schedule specifies the quantity as nearly as can be estimated and the quality of each kind of paper required, but the contractor must furnish the quantity which may be needed, whether more or less than the estimate."

"No. 39. The successful bidders will be required to enter into a contract to furnish the quantities required whether more or less than the estimates."

All these papers were a part of the contract in which the Republic Company, as party of the first part, covenants to furnish the Public Printer, as party of the second part, "so much of the estimated quantity as may be ordered by the party of the second part, whether more or less than the estimate stated in the proposal," and the Public Printer covenants to pay the sum of three cents per pound for the same.

The schedule certainly does "set forth in detail" the "quantity required," as provided by the act. But it is said that the provision of the proposal that more or less may be required is not detailed. If that is so, it does not relieve the contractor of the obligation. Only the government can complain that its agents have not conformed to the statute, whereas it is asking to enforce the contract as made.

The covenant of the Republic Company is in the printed form of contract, and it is difficult to believe that the government intended by the language used to depart from the carefully reiterated provisions preceding it that the estimate was an estimate only, and that the contract must be for the government's requirements during the period it covered or that the Republic Company so understood it. Such a construction does violence to what is obviously the main purpose of the statute and of the contract, namely, that the government shall provide for its needs during fixed periods of time, and not be at the risk of the market for its needs as they arise from day to day. If the contract had stopped with the words "so much of the estimated quantity as may be ordered," there would be more force in the contention that the estimate was a limitation, but effect must be given to the words immediately following, "whether the same be more or less than the estimate stated in the proposal," and they seem to me to completely exclude the construction that the estimate is a limitation.

If the contract is one for the government's requirements, then the fact that its requirements may vary largely does not make its contracts to differ in principle from those of a manufacturer, a hotel keeper, a railroad, or a steamship company. Both parties are bound; each taking the risk of the extent of the requirements and the risk of the market. Clearly, if the market price for paper had fallen, the government could not have supplied its requirements by purchasing from other

parties. Mr. Justice Davis said, in Grant v. United States, 7 Wall. 331, at page 338, 19 L. Ed. 194:

"The only remaining point in the case relates to the rescission by Secretary Cameron of the order of the 9th of March. This proceeding was undoubtedly taken because the supplies needed in Arizona could be either purchased there at cheaper rates, or forwarded more securely from St. Louis. Whether the conduct of the Secretary of War was or was not justifiable is not a question to be considered in deciding this suit; for the claimant has not shown a state of case on which he could recover if the rescinding order had never been made. The contract entitled him to furnish, at certain prices, all the supplies that might be needed in Arizona until the 20th of March, 1862. To enable him to recover for a breach of this contract, he should have proved that supplies were needed at the posts in Arizona after the rescinding order was made, and the pecuniary loss he sustained in not being allowed to furnish them. This he has wholly failed to do."

I think the judgment should be reversed.