LEACH v. KENTUCKY BLOCK CANNEL COAL CO., Inc.

(District Court, S. D. New York. February 5, 1919.)

CONTRACTS ⟐⟐10(4)—MUTUALITY.

    A contract by which defendant agreed to furnish plaintiff with such coal as should be ordered by him up to 25,000 tons per year, but which did not obligate plaintiff to purchase any quantity, *held* not enforceable by plaintiff for lack of mutuality.

At Law. Action by Francis M. A. Leach against the Kentucky Block Cannel Coal Company, Incorporated. On motion by defendant for judgment on the pleadings. Granted.

Howe, Smith & Sawyer, of New York City (Daniel D. Sherman, of New York City, of counsel), for the motion.

Stetson, Jennings & Russell, of New York City (Thomas Garrett, Jr., of New Brighton, N. Y., and Malcolm S. McN. Watts and Coulter D. Young, both of New York City, of counsel), opposed.

MAYER, District Judge. The complaint alleges, for a first cause of action, that defendant owns and operates a coal mine in Kentucky; that in April, 1915, plaintiff entered into a contract with defendant for the sale and distribution of defendant's products for five years in that territory of the United States and Canada which lies east of the seventy-ninth meridian of longitude; and it is then alleged:

"Sixth. The terms and conditions of said contract were that plaintiff was to introduce defendant's products in the territory in question, and to sell as much thereof as possible, and in consideration for plaintiff's undertaking defendant agreed to sell to plaintiff for delivery within said territory all coal which plaintiff would order up to twenty-five thousand (25,000) tons per annum, provided plaintiff purchased at least two thousand (2,000) tons of coal per annum, the price which plaintiff was to pay for such coal for the year ending March 31, 1916, to be two dollars ($2.00) per net ton of two thousand pounds free on board cars at the mines, and for year subsequent to March 31,

⟐⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

1916, at the minimum price fixed by the defendant for shipments of its coal to Western points; it being further provided that the quality and preparation of the coal was to be equal to the standard shipments of the defendant, and if special preparation was ordered by the plaintiff, the same was to be paid for at the cost thereof to the defendant, and it was understood and agreed that plaintiff had the right to resell said coal at such profit as he could obtain, and it was further provided that no export shipments were contemplated by said contract, and the defendant agreed to help the plaintiff with advertising and in every other way possible."

The complaint proceeds to set forth that during the year commencing April 1, 1915, and ending March 31, 1916, plaintiff placed orders with defendant for resale to plaintiff's customers for 2,772.15 tons of coal and paid defendant in full for all of such coal; that during the year commencing April 1, 1916, and ending March 31, 1917, plaintiff placed orders with defendant for resale to plaintiff's customers for approximately 7,000 tons, but defendant failed to deliver more than 2,699.25 tons; that on March 20, 1917, there were outstanding orders of the plaintiff for the delivery of coal by defendant equal to about 3,240 tons, which defendant had not delivered to plaintiff in accordance with the terms of plaintiff's orders, and on March 20, 1917, defendant asked plaintiff to cancel said orders, which plaintiff refused to do; that since March 31, 1917, plaintiff has ordered and defendant has accepted orders for delivery of 50 cars, or approximately 2,000 tons, of coal, only 20 cars of which have been delivered to plaintiff, and defendant has failed to deliver the balance; that plaintiff duly ordered during said period 30 additional cars of coal, but defendant wrongfully refused to accept plaintiff's orders for such additional 30 cars of coal.

It is then alleged that on May 24, 1917, defendant notified plaintiff that until further notice defendant would not accept orders for filling in the year ending March 31, 1918, and that plaintiff's orders for coal which had been given prior to April 1, 1918, would not be filled.

Certain details are then set forth, showing the general nature of the damage claimed to have been suffered by plaintiff, and the pleader concludes by alleging that by reason of defendant's conduct in failing to deliver coal to plaintiff or accept his order for the delivery of defendant's products, pursuant to the agreement, plaintiff was obligated to refrain from selling defendant's products, and was deprived of all benefits from an extraordinary market and demand therefor which existed from August, 1916, to July, 1917, during which time plaintiff could have resold at least 20 tons of defendant's products at an average profit of at least $3 per ton.

For a second cause of action, plaintiff, after repeating various allegations, alleges facts which he asserts constitute overcharges in the aggregate sum of $2,083.31.

In his third and final cause of action plaintiff alleges that he was unable to perform contracts with his customers by reason of defendant's conduct, all to his damage. The complaint concludes with a demand by plaintiff for judgment against defendant for his damages in the sum of $75,000, reserving all claims for damages accruing subsequent to the date of the complaint.

The New York practice on such motions is well settled. Such a motion searches the complaint, and "the sufficiency of the complaint must be tested as upon a demurrer." People v. O'Brien, 209 N. Y. 366, 103 N. E. 710; Clark v. Levy, 130 App. Div. 389, 114 N. Y. Supp. 890.

In a pleading it is immaterial by what name the alleged agreement of the parties is designated; that is, whether by the use of the word "contract" or "agreement." The question is what the agreement sets forth. The essential feature of the agreement, according to paragraph sixth of the complaint, is that defendant agreed to sell to plaintiff, for delivery within the named territory, all coal which plaintiff would order up to 25,000 tons per annum. There is no obligation whatever upon plaintiff to order any coal. If plaintiff had refused or neglected to order coal, defendant would not have had any cause of action against him. The case is not one where one party agrees to supply the requirements of another. See U. S. v. Republic Bag & Paper Co., 250 Fed. 79, —— C. C. A. ——, where there is a general discussion of this type of agreement, with leading cases cited.

On the contrary, the agreement is in principle, in one aspect, within that class of cases which have come to be known as "will, wish, or want" contracts. It is an agreement clearly lacking in mutuality. American Cotton Oil Co. v. Kirk, 68 Fed. 791, 15 C. C. A. 540; Commercial Wood & Cement Co. v. Northampton, 115 App. Div. 388, 100 N. Y. Supp. 960; Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696.

In any event, because there was no obligation upon plaintiff to order up to 25,000 tons, the case is well within the principle of Pressed Steel Car Co. v. Union Pacific Railroad (D. C.) 254 Fed. 316, filed December 17, 1918. There is nothing to the contrary in Munson S. S. Line v. Grimwood, 249 Fed. 722, 161 C. C. A. 632. Indeed, in that case the court indicated, in passing, its full agreement with the Cold Blast Transp. Co. Case, supra.

For the reasons outlined, the first and third causes of action set forth in the complaint do not state causes of action, and are demurrable.

Where, however, orders under the agreement were accepted, each order so accepted, or sale, may give rise to the cause of action. Such causes of action are attempted to be pleaded in the second cause of action of the complaint; but, by repeating various allegations of the first cause of action, plaintiff has made the second cause of action demurrable. It is quite plain, however, that on the facts indicated in the second cause of action a complaint can be successfully drawn. Therefore an opportunity will be afforded to plaintiff to amend.

Motion for judgment on the pleadings granted, with leave to plaintiff to amend his complaint within 20 days. Submit on one day's notice.