THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v EDWARD J. MURPHY et al., Respondents. [652 NYS2d 754] —In a proceeding pursuant to Executive Law § 63-c to recover public funds, the petitioner appeals from a judgment of the Supreme Court, Suffolk County (Rohl, J.), dated August 23, 1995, which, inter alia, dismissed the proceeding.

Ordered that the judgment is modified by deleting the provision thereof which dismissed that branch of the petition which was to recover money paid to Edward J. Murphy as the "cash-in" value of 3.75 personal days and 37.5 vacation days and substituting therefor a provision granting that branch of the petition; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Suffolk County, for further proceedings consistent herewith.

The State commenced this proceeding to recover from the respondents what it deems to have been an illegally or improperly excessive amount of compensation paid to Edward J. Murphy, a district superintendent of the Board of Cooperative Educational Services Third Supervisory District, Suffolk County, New York, now known as the Western Suffolk Board of Cooperative Educational Services (hereinafter BOCES). The State claims that the initial contract and continuing employment agreements made between Murphy and BOCES were illegal or unauthorized or were otherwise unenforceable because they were void as against public policy insofar as Murphy was

permitted to accrue excessive amounts of sick and vacation leave and to "cash in" all his accumulated leave time shortly before and upon his retirement, which was effective September 30, 1992. We find no basis for invalidating Murphy's contracts with BOCES and ordering the repayment of all or even the bulk of the moneys paid to him in June and October 1992. We have, however, found an error in the computation of Murphy's final payment and have modified the judgment accordingly.

The position which was held by Murphy, BOCES district superintendent, is actually a combination of two jobs, namely, district superintendent of schools (Education Law § 2204) and executive officer of the board of this particular BOCES (Education Law § 1950 [2]). By statute Murphy was to be compensated by the State for his services as the former (Education Law § 2209 [1], former § 2210 [1]) and by the local BOCES for his service as the latter (Education Law § 2209 [2]). Indeed, Education Law § 1950 (4) (a) specifically allowed BOCES to pay a "supplementary salary" to the district superintendent, its executive officer. Since Murphy was not purely a State employee, but an employee of BOCES, his BOCES compensation was not subject to the statutes and rules governing State employment.

While the law has since been amended to provide limitations on the extent of compensation a BOCES superintendent may receive (see, L 1993, ch 295), at the time Murphy began working at BOCES and continuing throughout his tenure as the BOCES district superintendent, the law provided for no such restrictions. Accordingly, Murphy's employment agreements with BOCES were neither illegal nor unauthorized. We further find that, while improvident, BOCES' offer to Murphy and his acceptance of the overly generous BOCES compensation package (which included extensive sick and vacation leave time, and the right to liquidate this leave at full pay) did not violate any articulated "public policy."

While there is no basis to set aside the payments made to Murphy in connection with his retirement or limiting his "cash-in" payment to the equivalent of 30 vacation days, we have, however, discovered an error in the calculation of his final payment. Insofar as Murphy's employment agreements did not provide that his personal leave and vacation time would fully accrue at the commencement of the contract term (contrary to sick leave which fully accrued on every July 1), it was error to pay Murphy on the full yearly basis of 5 personal and 50 vacation days when he worked only three months, or one-quarter of the 1992-1993 contract year. Thus, as of September 30, 1992, Murphy had earned only 1.25 personal days and 12.5

vacations days, which, less the one vacation day taken, entitled him to "cash-in" 11.5 vacation days and 1.25 personal days, rather than the 54 such days (49 vacation and 5 personal) for which he was actually paid. Having been overcompensated by 41.25 days, Murphy was overpaid the gross sum of $43,100.48 (41.25 days at $1,044.86 per day).

In light of the above determination, the matter must be remitted to the Supreme Court, Suffolk County, for further proceedings, including the determination of the precise amount to be repaid directly by Murphy to the State based on the net sum he received after tax withholding, and whether Murphy should be required to pay interest on that amount and, if so, at what rate. Ritter, J. P., Thompson, Friedmann and McGinity, JJ., concur.