■ STATE OF NEW YORK et al., Appellants, v ALLAN GRECCO et al., Respondents. [800 NYS2d 214]—

Motion by the respondents Robert Toussie, Chandler Property, Inc., and Rod Staten Corporation for leave to reargue an appeal from a judgment of the Supreme Court, Suffolk County, entered September 30, 2003, which was determined by decision and order of this Court dated December 6, 2004 [13 AD3d 350]. Separate motion by the respondents Robert Toussie, Chandler Property, Inc., and Rod Staten Corporation for leave to appeal to the Court of Appeals from the decision and order of this Court. Separate motion by the respondent Allan Grecco for leave to appeal to the Court of Appeals from the decision and order of this Court.

Upon the papers filed in support of the motions and the papers filed in opposition or relation thereto, it is

Ordered that the motions for leave to appeal are denied; and it is further,

Ordered that the motion for leave to reargue is granted, and upon reargument, the decision and order of this Court dated December 6, 2004 is recalled and vacated, and the following decision and order is substituted therefor:

In an action, inter alia, pursuant to Executive Law § 63-c to recover public money improperly obtained, the plaintiffs appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Suffolk County (Lifson, J.), entered September 30, 2003, as, upon the granting of the motion of the defendant Allan Grecco to dismiss the complaint insofar as asserted against him pursuant to CPLR 3211 (a) (7), and the granting of those branches of the motion of the defendants Robert Toussie, Chandler Property, Inc., and Rod Staten Corporation which were to dismiss the first and fourth causes of action insofar as asserted against them pursuant to CPLR 3211 (a) (7), dismissed the complaint insofar as asserted against the defendant Allan Grecco and dismissed the first and fourth causes of action insofar as asserted against the defendants Robert Toussie, Chandler Property, Inc., and Rod Staten Corporation.

Ordered that the judgment is modified, on the law, by deleting the provisions thereof dismissing the first and second causes of action as against Grecco insofar as those causes of action concern the purchase of certain real property known as the Chandler estate, and dismissing the first cause of action as against the defendants Robert Toussie, Chandler Property, Inc., and Rod Staten Corporation, insofar as that cause of action concerned the purchase of certain real property known as the Chandler estate; as so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, the first and second causes of action as against Grecco, and the first cause of action as against the defendants Robert Toussie, Chandler Property, Inc., and Rod Staten Corporation, are reinstated to the extent indicated, and those branches of the motions which were to dismiss those causes of action are denied to the extent indicated.

This appeal is one of three before this Court arising from real estate transactions that occurred while the defendant Allan Grecco was the Deputy Director and then Director of the Suffolk County Division of Real Estate (hereinafter SCDRE), particularly Suffolk County's purchase of certain real property known as the Chandler estate from the defendant Robert

Toussie. The purchase sparked a firestorm of controversy, and gave rise to various actions and government investigations, including this civil action by the Attorney General against Grecco, as well as Toussie and two of Toussie's corporations (hereinafter collectively Toussie). The Attorney General alleged causes of action pursuant to Executive Law § 63-c, commonly known as the Tweed Law, General Municipal Law article 18, and Executive Law § 63 (12). Upon the separate motions of Grecco and Toussie pursuant to CPLR 3211 (a) (7), the Supreme Court dismissed the complaint. We modify by reinstating causes of action brought pursuant to Executive Law § 63-c which concern the purchase of the Chandler estate.

Initially, although Grecco and Toussie proffered voluminous documentary and other evidence in support of their respective motions, neither moved for summary judgment. Further, the Supreme Court did not convert the motions to dismiss into motions for summary judgment (*see* CPLR 3211 [c]), and it cannot be said that the parties, particularly the Attorney General, charted a summary judgment course (*cf. Nesenoff v Dinerstein & Lesser*, 5 AD3d 746 [2004]). Nor did the documentary and other evidence conclusively establish a defense to the action as a matter of law (*see Arnav Indus. Retirement Trust v Brown, Raysman, Millstein, Felder & Steiner*, 96 NY2d 300, 303 [2001]; *Maas v Cornell Univ.*, 94 NY2d 87, 91 [1999]; *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]), or establish that a material fact alleged by the Attorney General was not a fact at all or that no significant dispute existed concerning it (*see Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]). Thus, our inquiry on this appeal is limited to determining whether, taking the allegations of the complaint as true and affording the Attorney General the benefit of every reasonable inference, the Attorney General has stated a cause of action against one or more of the defendants (*see Leon v Martinez, supra* at 87-88). In applying this standard, we emphasize that we express no opinion as to the truth or falsity of the allegations of the complaint or, consequently, as to the conclusions the Attorney General argues should be drawn therefrom. Rather, on the procedural posture of this action, these issues are not properly before us for summary resolution.

The relevant factual background of this appeal may be summarized as follows: Grecco was the Deputy Director and then Director of SCDRE from late 1996 or early 1997 through December 2001. As Director, his duties included, inter alia, managing the County's real estate holdings, including overseeing the auction of properties obtained in tax foreclosures, and obtaining and reviewing appraisals of property the County

intended to purchase (*see* Suffolk County Code § C16-4). In addition, SCDRE administered the Suffolk County Community Greenways Fund (hereinafter Greenways Fund). The Greenways Fund, created in 1998 to protect open spaces, parks, and farmland from residential and commercial development, inter alia, allocated $20 million to acquire and preserve open spaces (*see* Suffolk County Code § C12-A [A] [1]). In 1999 the Suffolk County Legislature authorized Grecco to purchase certain real property known as the Chandler estate using money from the Greenways Fund. The Chandler estate, comprised of approximately 40 acres of undeveloped land on the shore of the Mt. Sinai Harbor in the Town of Brookhaven, was highly desirable because it was one of the last open spaces in the harbor area, and because it had ecological and historical significance. The estate was then owned by Toussie Family Enterprises, Ltd., one of several corporations owned by the defendant Robert Toussie and his son Isaac, prominent real estate developers in Suffolk County. Several appraisals of the property yielded divergent estimated fair market values for the property. Ultimately, Grecco negotiated the purchase of the Chandler estate from Toussie for $5 million, with $500,000 of that sum to be paid by the Town of Brookhaven to settle a zoning lawsuit. The closing occurred in September 2000.

In general, the complaint alleges that "Grecco overrode the County's various appraisal safeguards and caused the County to pay substantially more for the Chandler Estate than its fair market value" (i.e., allegedly almost twice its appraised fair market value) and that, in addition, "Toussie was allowed to regularly close far later on properties purchased at County auctions [i.e., up to two years] than was the norm for other successful bidders." Specifically, as to the purchase of the Chandler estate, it is alleged that Grecco took over the lead in the negotiations, supplied his staff with information influencing the appraised value of the property which he knew to be unrealistic, false, or misleading, and pressured his staff to approve inflated increases to the value of the property to meet the $5 million price sought by Toussie. Further, it is alleged, such efforts were successful, as the staff agreed to a value for the property at up to $4.5 million, when it had approved prior appraisals just the year before at no more than $2.7 million. It was also alleged that Grecco directed the contract of sale be drafted to afford Toussie additional unwarranted benefits, including, inter alia, a provision stating that the property was worth more than the purchase price and providing that the excess value could be claimed as a tax-deductible contribution to the County. Grecco allegedly benefitted from his conduct through a conflict of inter-

est created by his ownership of a title company, Peerless Abstract, Inc. (hereinafter Peerless), both prior to and during his tenure with the SCDRE. It was alleged that further benefit was conferred on Grecco by Toussie revising his standard home sale contract to name Peerless as one of two title companies from which title insurance was to be ordered, with some contracts even providing for a rebate if Peerless were used. As a result, it was alleged, Toussie became Peerless's main customer, accounting for approximately 40% of Peerless's business, up from 1.7 % in prior years. As to Toussie, it was alleged that he "knowingly participated in, encouraged and induced" Grecco's actions by providing him with false and/or misleading information to use to inflate the price to be paid for the Chandler estate. It was alleged that the excessive purchase price paid for the Chandler estate and the delayed closings on the County properties Toussie purchased at auction permitted Toussie to remain liquid, which was critical to his business.

Prior to answering, Grecco and Toussie separately moved to dismiss the complaint insofar as asserted against them pursuant to CPLR 3211 (a) (7) for failure to state a cause of action.

In support of his motion, Grecco argued that not only were all of his actions concerning the Chandler estate authorized and ultimately approved by the County, but also, that the price paid for the Chandler estate was fair and the result of pressure brought to bear upon him to obtain the highly desirable property expeditiously. Indeed, he asserted, there had been several official investigations into the purchase, none of which had concluded that he had engaged in any wrongdoing. Thus, he argued, it could not be said that any payment was "without right" within the meaning of Executive Law § 63-c. Further, Grecco asserted, he could not have converted, disposed of, obtained, and/or received any public funds without right in violation of Executive Law § 63-c because he did not receive anything of value (other than his salary) from the purchase of the Chandler estate or the allegedly delayed closings, and it was not alleged that his salary was "illegally paid, or that the purchase of the Chandler estate by the County of Suffolk was by its nature illegal." Rather, he asserted, at best, there were only vague allegations of anticipated and potential pecuniary benefit running to Peerless. Grecco argued that the complaint merely reflected the Attorney General's opinion that the County overpaid for the Chandler estate, and differences of opinion were not actionable pursuant to Executive Law § 63-c. In addition, Grecco denied that he had pressured any of his staff to approve an increased valuation of the property, and noted that the

appraisal ultimately approved was not done at his behest or by SCDRE, but rather was commissioned by the Town of Brookhaven. Finally, Grecco argued, the allegedly delayed closings on County properties purchased by Toussie violated no then-existing or after-enacted policies concerning such sales, and Grecco's interest in Peerless was fully disclosed to the County, which never claimed any conflict of interest.

Toussie, inter alia, raised many of the same arguments raised by Grecco. In addition, both Grecco and Toussie argued that the action was politically motivated and that the Attorney General was guilty of prosecutorial misconduct. Finally, both noted that Toussie had offered to repurchase the Chandler estate for up to $6 million.

The Supreme Court granted the motions and dismissed the complaint. We modify.

The Tweed Law, currently codified in Executive Law § 63-c, provides in relevant part as follows:

"Where any money, funds, credits, or other property, held or owned by the state, or held or owned officially or otherwise for or in behalf of a governmental or other public interest, by a domestic, municipal, or other public corporation, or by a board, officer, custodian, agency, or agent of the state, or of a city, county, town, village or other division, subdivision, department, or portion of the state, has heretofore been, or is hereafter, without right obtained, received, converted, or disposed of, an action to recover the same, or to recover damages or other compensation for so obtaining, receiving, paying, converting, or disposing of the same, or both, may be maintained by the state in any court of the state . . . although a right of action for the same cause exists by law in some other public authority, and whether an action therefor in favor of the latter is or is not pending when the action in favor of the state is commenced. The attorney-general shall commence an action, suit or other judicial proceeding, as prescribed in this section, whenever he deems it for the interests of the state so to do; or whenever he is so directed, in writing, by the governor." (Executive Law § 63-c [1].)

The Tweed Law was initially enacted in 1875 in response to the systematic looting of the New York City treasury by William "Boss" Tweed and his cohorts (see L 1875, ch 49, §§ 1, 3, 4; *People v New York & Manhattan Beach Ry. Co.*, 84 NY 565 [1881]; *People v Tweed*, 63 NY 202 [1875]). There is no legislative history for the original enactments. Indeed, a contemporaneous newspaper article described the statute as passing "through both houses under a pall of solemn silence, which may be accepted perhaps as an augury of their portent to those to

whom they may be hereafter applied. Not a single speech was made in either house on any one of these bills, nothing more than a few explanatory remarks by the gentleman who had them in charge, and in each instance, as soon as the bills severally were passed by both houses, the Governor affixed his signature to them on the same day, and they became operative law" (*The "Public Civil Remedy" Bills in Force as Laws*, New York Times, Mar. 13, 1875, at 7). The Court of Appeals has stated the following concerning the purpose of the law (which was originally embodied in several acts):

"These acts created no new causes of action and did not purport to take away those existing in favor of counties or municipalities, unless the state manifested its intention to enforce them by action. They simply authorized the state authorities, when they saw fit to do so, to intervene and enforce causes of action against offending parties, which had accrued to certain subordinate political divisions of the state, to recover property [other than real property] which had been taken or obtained from them without right. The People in the litigation when they bring suit act as the representatives of the municipality or county to establish their rights. It recovers on a cause of action existing in their favor, and can do so only on proof of such a cause of action, and the moneys, when collected, are to be delivered to the parties entitled to them. The circumstances out of which the act arose and the evils it was intended to correct are too recent in occurrence and too significant in purpose to permit any misconception as to its force or effect. Thus it was said in *People v. Tweed* (5 Hun, 382 ): 'Its object was to create a remedy for the ultimate benefit of the county which should not be controlled by the local authorities,' and Judge ANDREWS states in *People v N.Y. & M.B.R.R. Co.* (84 NY 565 ): 'The main object of the act, as is evident, was to give an additional remedy for the plundering of municipalities by faithless and venal officials.' The case is, therefore, to be determined by the same principles which would govern an action brought by the [municipality], to recover the same moneys." (*People v Wood*, 121 NY 522, 530 [1890]; *see State of New York v Seventh Regiment Fund*, 98 NY2d 249, 258-259 [2002]; *People v O'Brien*, 209 NY 366, 371 [1913]; *People v New York & Manhattan Beach Ry. Co.*, 84 NY 565 [1881], *supra* [recovery of real property not within purview of statute].) Thus, although criminal conduct prompted the initial enactment of the Tweed Law, the law is not limited to such conduct (*see e.g. State of New York v Seventh Regiment Fund, supra* [conversion claim arising from dispute over ownership of military memorabilia]; *People v Journal Co.*, 213 NY 1, 3 [1914] [seeking recovery of double billing for single printing of

the law for two municipal entities, although billed and paid in good faith pursuant to then-custom in the industry]; *People v Sutherland*, 207 NY 22 [1912] [seeking recovery of money paid through clerk of court to clerk's employees in excess of that permitted under enabling statute]; *People v Fields*, 58 NY 491 [1874] [seeking recovery of money paid to firemen in excess of that permitted under enabling statute]; *People v Murphy*, 235 AD2d 554 [1997] [action to recover allegedly excessive pay provided to employee of BOCES pursuant to an employment contract]; *People v Sheppard*, 37 App Div 119 [1899] [action to recover on money deposited with defendant bank and officers]; *cf. People v O'Brien, supra* [claim of intentionally fraudulent billing of State]; *State of New York v Estate of Frankel*, 65 AD2d 788 [1978] [action to recover damages for Medicaid fraud]). Rather, the phrase "without right" as used in the statute means no more than actionable by the State or a municipality pursuant to any viable action or proceeding at law or in equity. There is no support for the contention advanced by both Grecco and Toussie that the Attorney General may invoke the Tweed Law only when a municipality otherwise refuses to act upon a viable basis for recovery, or upon allegations that every relevant municipal official was involved in the targeted wrongful conduct. Indeed, such a contention is contrary to the plain language of the statute. In sum, the Tweed Law vests the Attorney General with the discretionary authority to seek the recovery of money or property (other than real property) belonging to the State or a municipality, or to recover damages or other compensation for the same, or both, pursuant to any viable action or proceeding at law or in equity available to the State or municipality. Here, taking the allegations of the complaint insofar as they concern the purchase of the Chandler estate as true, and affording the Attorney General the benefit of every reasonable inference, as we must, we cannot say that there is no cause of action upon which the Attorney General might recover pursuant to Executive Law § 63-c. Thus, the first and second causes of action as against Grecco, and the first cause of action as against Toussie, insofar as those causes of action seek relief pursuant to Executive Law § 63-c arising from the purchase of the Chandler estate, should not have been dismissed.

This conclusion is not altered by the voluminous documentary and other evidence placed on the record by the defendants. Rather, such evidence merely addressed various fundamental factual issues in dispute, including, inter alia, whether Grecco was at all relevant times acting faithfully in the course of his employment with the County and within the scope of his grant of authority, whether the County, with full knowledge of all of

the relevant facts, approved and, in effect, ratified the purchase of the Chandler estate, and whether the purchase price was fair under all of the facts and circumstances (*see e.g. People v Journal Co., supra; People v Sutherland, supra; People ex rel. Heinrich v Travis,* 175 App Div 721 [1916]; *see also Rose Ocko Found. v Lebovits,* 259 AD2d 685, 688 [1999] [ratification requires sufficient knowledge of the relevant facts]). As noted, *supra,* these disputed factual issues are not properly raised and resolved on a motion to dismiss pursuant to CPLR 3211 (a) (7). Nor, as also discussed, *supra,* did such documentary and other evidence conclusively establish a defense to the action as a matter of law, or establish that a material fact alleged by the Attorney General was not a fact at all or that no significant dispute existed concerning it. For example, Toussie's offer in May 2002 to repurchase the Chandler estate for $6 million does not establish the value of the property at the time of the sale.

However, we do not reach the same conclusion as to causes of action pursuant to Executive Law § 63-c arising from the allegedly delayed closings on County properties purchased by Toussie at auction. The complaint does not allege that any particular act or omission by Grecco either permitted Toussie to delay closings, or compelled other purchasers to generally close more quickly. Rather, the complaint merely alleges, in effect, a de facto acquiescence in the delay. However, until 1999, there were no standards in place as to a time frame for such closings. After 1999 closings were only to occur within two years of the auction at which the property was sold (*see* Suffolk County Code § A14-30 [G] [1]). Given this, so much of the complaint as sought relief pursuant to Executive Law § 63-c arising from the allegedly delayed closings was properly dismissed.

Further, the fourth cause of action pursuant to Executive Law § 63 (12) was properly dismissed. The allegations concerning the purchase of the Chandler estate did not satisfy the requirement of "repeated fraudulent or illegal acts" or "persistent fraud or illegality in the carrying on, conducting or transaction of business" needed to state a cause of action pursuant to Executive Law § 63 (12) (*see Matter of People v Ashil Hyde Park,* 298 AD2d 393 [2002]; *Matter of State of New York v Magley,* 105 AD2d 208 [1984]).

Finally, the third cause of action alleging a violation of General Municipal Law article 18 was properly dismissed insofar as asserted against Grecco. Although it was alleged that Grecco violated the statutory conflict of interest laws set forth in the statute, no relevant statutory remedy is sought (*see* General Municipal Law §§ 804, 805). On appeal, the Attorney General

does not challenge the dismissal of the second and third causes of action insofar as asserted against Toussie. Adams, J.P., Ritter, Goldstein and Crane, JJ., concur.